# *TEAMSTERS LOCAL 330*

## *AREA WIDE MATERIAL HAULING AGREEMENT*




affiliated with the

*International Brotherhood of Teamsters*

and

*Teamsters Joint Council No. 25*

effective

*June 1, 2006 through May 31, 2009*



# TEAMSTERS LOCAL 330 EXECUTIVE BOARD

2400 BIG TIMBER RD., BLDG. B, SUITE 201
ELGIN, IL 60124
(847-695-1516)

**DOMINIC ROMANAZZI**
**PRESIDENT**

JIM HICKEY
VICE PRESIDENT

SAM CAMPUS
SECRETARY/TREASURER

TIM BARKEI
RECORDING SECRETARY

TRUSTEES
JIM OLSZEWSKI
SERETHA HOLLINGSWORTH
ROY McCASLIN

Website: www.teamsters330.org

## *TABLE OF CONTENTS*


| *ARTICLE* | | *PAGE NO.* |
|---|---|---|
| 1. | RECOGNITION AND SCOPE OF AGREEMENT | 1 |
| 2. | WORK OUTSIDE THE LOCAL UNION'S GEOGRAPHICAL JURISDICTION | 4 |
| 3. | UNION SECURITY | 4 |
| 4. | SUBCONTRACTING | 5 |
| 5. | PRE-JOB CONFERENCE | 6 |
| 6. | NO STRIKES OR LOCKOUTS | 7 |
| 7. | GRIEVANCES AND ARBITRATION | 7 |
| 8. | JURISDICTIONAL DISPUTE | 9 |
| 9. | WAGES | 9 |
| 10. | HEALTH AND WELFARE FUND | 14 |
| 11. | PENSION FUND | 17 |
| 12. | CHECK-OFF | 19 |
| 13. | WORKING HOURS AND OVERTIME | 19 |
| 14. | GENERAL CONDITIONS | 21 |
| 15. | LABOR WORK | 23 |
| 16. | NON-DISCRIMINATION | 23 |
| 17. | EMPLOYMENT TERMINATION | 24 |
| 18. | HOLIDAYS | 24 |
| 19. | VACATIONS AND LEAVES OF ABSENCE | 25 |

## TABLE OF CONTENTS (CONT'D)


| ARTICLE | | PAGE NO. |
|---|---|---|
| 20. | OWNER-DRIVERS | 25 |
| 21. | MECHANIC'S TOOLS | 25 |
| 22. | JOB ACCESS BY UNION STEWARDS | 26 |
| 23. | PROTECTION OF RIGHTS | 27 |
| 24. | SEPARATE AGREEMENTS | 27 |
| 25. | COMPLIANCE WITH SAFETY AND TRAFFIC LAWS | 27 |
| 26. | ECONOMIC LOSS | 27 |
| 27. | INSPECTION PRIVILEGES | 28 |
| 28. | BULLETIN BOARD ACCESS | 28 |
| 29. | SALES AND TRANSFERS-SCOPE OF OBLIGATION | 29 |
| 30. | CONFORMITY TO LAW – SAVINGS CLAUSE | 30 |
| 31. | FUNERAL LEAVE | 30 |
| 32. | MILITARY LEAVE OF ABSENCE | 30 |
| 33. | JURY DUTY | 31 |
| 34. | EQUIPMENT | 31 |
| 35. | TEAMSTERS JOINT COUNCIL NO. 25 TRAINING FUND | 31 |
| 36. | UNIFORM DRUG/ALCOHOL ABUSE POLICY | 32 |
| 37. | D.R.I.V.E. AUTHORIZATION AND DEDUCTION | 32 |
| 38. | TEAMSTERS NATIONAL 401(k) PLAN | 33 |
| 39. | FEDERAL AND STATE | 33 |
| 40. | DURATION AND TERMINATION | 34 |

# *AREA WIDE MATERIAL HAULING AGREEMENT*

THIS AGREEMENT ENTERED INTO THE 31st DAY OF January 2007 BY AND BETWEEN A.T.M. Ext. LTD. HEREINAFTER CALLED THE EMPLOYER, AND GENERAL TEAMSTERS, CHAUFFEURS, SALESDRIVERS AND HELPERS LOCAL 330, AFFILIATED WITH THE INTERNATIONAL BROTHERHOOD OF TEAMSTERS, HEREINAFTER CALLED THE UNION. THE AGREEMENT SHALL BE KNOWN AS THE AREA WIDE MATERIAL HAULING AGREEMENT.

## *WITNESSETH*

1. THE PURPOSE OF THIS AGREEMENT IS (A) TO ENTER INTO A DEFINITE LABOR MANAGEMENT CONTRACT COVERING THE WAGES, HOURS, CONDITIONS OF WORK AND TERMS OF EMPLOYMENT IN THE RELATIONSHIP BETWEEN EMPLOYER AND EMPLOYEE; (B) TO PREVENT STRIKES, LOCKOUTS, AND WORK STOPPAGES; (C) TO ADOPT SUITABLE MEASURES FOR THE PEACEFUL SETTLEMENT OF GRIEVANCES AND DIFFERENCES; (D) TO SECURE THE EMPLOYER SUFFICIENT CAPABLE EMPLOYEES; (E) TO PROTECT THE ECONOMIC AND EMPLOYMENT WELFARE OF EMPLOYEES.

2. IT IS MUTUALLY UNDERSTOOD AND AGREED THAT THE FOLLOWING TERMS RELATING TO THE WAGES, HOURS AND WORKING CONDITIONS OF WORKMEN COVERED BY THIS AGREEMENT HAVE BEEN DECIDED UPON THE MEANS OF COLLECTIVE BARGAINING, AND THAT THE FOLLOWING PROVISIONS WILL BE BINDING UPON THE PARTIES TO THIS AGREEMENT DURING THE TERM OF THIS AGREEMENT AND ANY RENEWAL PERIOD THEREOF.

## *ARTICLE 1 - RECOGNITION AND SCOPE OF AGREEMENT*

1.1 *GEOGRAPHIC COVERAGE*. THE GEOGRAPHIC AREA IS THE AREA COVERED BY THE I.B. OF T. LOCAL NO. 330 WITHIN THE JURISDICTION OF I.B. OF T. JOINT COUNCIL NO. 25.

1.2 *RECOGNITION*. EMPLOYER RECOGNIZES THE UNION AS THE SOLE AND EXCLUSIVE BARGAINING AGENT WITH RESPECT TO RATES OF PAY, HOURS OF WORK AND ALL OTHER CONDITIONS OF EMPLOYMENT FOR ALL EMPLOYEES COVERED BY THIS AGREEMENT.

1.3 *BARGAINING UNIT*. EMPLOYEES COVERED BY THIS AGREEMENT ARE ALL EMPLOYEES IN THE CLASSIFICATIONS OF WORK COVERED BY THIS AGREEMENT EMPLOYED BY THE EMPLOYERS IN THE CONTRACT TERRITORY AND ENGAGED IN THE WORK DESCRIBED IN SECTION 1.4 HEREOF.

1.4 *WORK COVERED*. JURISDICTION. THIS AGREEMENT SHALL APPLY TO EMPLOYEES IN THE CLASSIFICATIONS HEREIN SET FORTH IN THE PERFORMANCE OF WORK INVOLVED IN THE FOLLOWING OPERATIONS:

A.) *HEAVY CONSTRUCTION:* HEAVY CONSTRUCTION IS DEFINED AS CONSTRUCTING SUBSTANTIALLY IN ITS ENTIRETY ANY FIXED STRUCTURE, OTHER IMPROVEMENT OR MODIFICATION THEREOF, OR AN ADDITION OR REPAIR THERETO, INCLUDING ANY STRUCTURE OF OPERATION WHICH IS AN INCIDENTAL PART OF A CONTRACT THEREOF, INCLUDING WITHOUT LIMITATION, RAILROADS AND STREET RAILWAY CONSTRUCTION PROJECT, SEWERS, WATER MAINS, GRADE SEPARATIONS, FOUNDATIONS, PILE DRIVING, PIERS, ABUTMENTS, RETAINING HIGHWAYS, DRAINAGE PROJECTS, SANITATION PROJECTS, AQUEDUCTS, IRRIGATION PROJECTS, FLOOD CONTROL PROJECTS, RECLAMATION PROJECTS, RESERVOIRS, WATER SUPPLY PROJECTS, WATER POWER DEVELOPMENT, HYDROELECTRIC DEVELOPMENT, DUCT LINES, PIPELINES, LOCKS, DAMS DIKES, LEVEES, REVETMENTS, CHANNELS, CHANNEL CUTOFFS, INTAKES, DREDGING PROJECTS JETTIES, BREAKWATERS, DOCKS, HARBORS, INDUSTRIAL SITES, AIRPORTS, EXCAVATION, DISPOSAL OF EARTH AND ROCK, AND STOCKPILING.

B.) *HIGHWAY CONSTRUCTION WORK:* HIGHWAY CONSTRUCTION WORK IS DEFINED AS ALL WORK ORDINARILY INCLUDED IN HIGHWAY CONSTRUCTION CONTRACTS, BRIDGES, SEWER AND STREET GRADING, STREET PAVING, CURB SETTING, SIDEWALKS, STOCKPILING, ETC. AND LANDSCAPING ON WORK WHERE PREVAILING WAGE RULES ARE IN EFFECT.

C.) REMOVAL AND DISPOSAL OF RUBBISH AND DEMOLITION DEBRIS FROM WRECKING JOBS.

D.) SNOW REMOVAL.

E.) HAULING OF CINDERS, SLAG, ASPHALT (INCLUDING LIQUID ASPHALT), GRINDINGS, SAND FILL AND ALL OTHER TYPES OF FILL ON CONSTRUCTION JOBS.

F.) DELIVERY TO AND SPREADING ON THE CONSTRUCTION SITE OR THE ROAD BED OF ANY STABILIZED BASE MATERIAL TO BE USED AS A SUB-SURFACE, INCLUDING BUT NOT LIMITED, TO FILL, POZ-O-PAC, AGGREGATE MATERIALS, BITUMINOUS AGGREGATE MATERIALS, CEMENT AGGREGATE MATERIALS OR ANY OTHER TRADE NAME OF BASE OR PAVING MATERIAL.

G.) BACK FILLING.

H.) DIGGING.

I.) LEVELING AND GRADING.

J.) STREET SWEEPING SPRINKLING AND FLUSHING.

K.) CONCRETE BREAKING.

L.) PIPELINE WORK.

M.) PAVEMENT MARKING AND SEALING.

N.) CONSTRUCTION SLAG OR ANY OTHER TRUCKING IN OR OUT OF STEEL MILLS.

O.) HAULING OF SALT.

P.) ASPHALT PLANT AND END LOADERS IN AREAS WHERE IT HAS BEEN PAST PRACTICE.

Q.) THE HAULING OF RECYCLED BROKEN ASPHALT AND RECYCLED BROKEN CONCRETE.

R.) THE SECURING AND TARPING OF ALL LOADS SHALL BE THE DRIVERS RESPONSIBILITY.

S.) CONCRETE PUMPER TRUCKS.

T.) CONCRETE CRUSHING PLANTS.

U.) STREET SWEEPERS.

V.) SLUDGE HAULING.

W.) STOCK PILING.

## *ARTICLE 2 - WORK OUTSIDE THE LOCAL UNION'S GEOGRAPHICAL JURISDICTION*

2.1 IN THE EVENT THE EMPLOYER ASSIGNS WORK TO EMPLOYEES COVERED BY THIS AGREEMENT TO BE PERFORMED OUTSIDE THE GEOGRAPHICAL JURISDICTION OF THIS LOCAL UNION AND WITHIN THE JURISDICTION OF ANOTHER I.B.T. LOCAL UNION WHICH HAS ESTABLISHED A HIGHER STANDARD OF WAGES AND BENEFITS FOR SUCH WORK, COVERED EMPLOYEES SHALL BE COMPENSATED THE HOURLY WAGE RATE EQUIVALENT OF THE HIGHER STANDARD FOR ALL SUCH WORK PERFORMED. FOR PURPOSES OF THIS ARTICLE, STANDARD OF WAGES AND BENEFITS SHALL MEAN THE STRAIGHT-TIME HOURLY LABOR COST OF SUCH WAGES AND BENEFITS OF THE EMPLOYER.

2.2 DISPUTES CONCERNING THIS APPLICATION OF THE REQUIREMENTS OF THIS ARTICLE, INCLUDING WHETHER A HIGHER STANDARD OF WAGES AND BENEFITS HAS BEEN ESTABLISHED BY THE OTHER I.B.T. LOCAL UNION MUST BE SUBMITTED TO THE PRESIDENT OF JOINT COUNCIL NO. 25 FOR THE PURPOSE OF RESOLUTION.

## *ARTICLE 3 - UNION SECURITY*

3.1 ***MAINTENANCE OF MEMBERSHIP.*** PRESENT EMPLOYEES WHO ARE MEMBERS OF THE UNION MUST, AS A CONDITION OF EMPLOYMENT, MAINTAIN SUCH MEMBERSHIP DURING THE TERM OF THIS AGREEMENT.

3.2 ***NEW EMPLOYEES.*** NEW EMPLOYEES SHALL AS A CONDITION OF EMPLOYMENT BECOME MEMBERS OF THE UNION ON OR AFTER THE THIRTY FIRST (31st) DAY OF EMPLOYMENT OR AFTER THE EXECUTION AND/OR SIGNING OF THIS AGREEMENT, AND SHALL MAINTAIN SUCH MEMBERSHIP AS A CONDITION OF CONTINUED EMPLOYMENT.

3.3 ***NEW EMPLOYEES – PROBATIONARY PERIOD.*** NEW EMPLOYEES AND EMPLOYEES HIRED AFTER A BREAK IN SENIORITY SHALL BE CONSIDERED PROBATIONARY EMPLOYEES WITH NO SENIORITY FOR 1.) THIRTY (30) DAYS WORKED BY THE EMPLOYEE OR 2.) SIXTY (60) CALENDAR DAYS OF CONTINUOUS EMPLOYMENT, WHICHEVER FIRST OCCURS, AFTER WHICH THEIR SENIORITY SHALL DATE BACK TO THE FIRST (1st) DAY OF THEIR CURRENT HIRING. THE EMPLOYER MAY, WITHIN SUCH PROBATIONARY PERIOD, DISCHARGE SUCH PROBATIONARY EMPLOYEE FOR ANY REASON WHATSOEVER, EXCEPT FOR MEMBERSHIP IN OR ACTIVITY ON BEHALF OF THE UNION.

3.4 ***ENFORCEMENT.*** ANY EMPLOYEE WHO REFUSES OR FAILS TO FULFILL THE OBLIGATIONS OF SECTIONS 3.1 OR 3.2 ABOVE SHALL FORFEIT HIS RIGHT OF

EMPLOYMENT; AND THE EMPLOYER SHALL DISCHARGE SUCH EMPLOYEE WITHIN THREE (3) WORKING DAYS OF RECEIVING WRITTEN NOTICE FROM THE UNION OF THE FAILURE OF AN EMPLOYEE TO FULFILL SAID OBLIGATIONS; PROVIDED, THAT THE UNION SHALL HOLD THE EMPLOYER HARMLESS FOR DEMANDS UNDER THIS SECTION NOT IN ACCORD WITH FEDERAL LAW.

3.4 *ADDITIONAL EMPLOYEES.* WHEN THE EMPLOYER NEEDS ADDITIONAL EMPLOYEES HE SHALL GIVE THE LOCAL UNION EQUAL OPPORTUNITY WITH ALL SOURCES TO PROVIDE SUITABLE APPLICANTS BUT SHALL NOT BE REQUIRED TO HIRE THOSE REFERRED BY THE UNION. THE NAMES AND ADDRESSES OF ALL NEW EMPLOYEES SHALL BE FURNISHED TO THE OFFICE OF THE UNION NOT LATER THAN THE FIRST PAY PERIOD AFTER THEIR HIRING.

## *ARTICLE 4 - SUBCONTRACTING*

4.1 EMPLOYER AGREES THAT IT WILL NOT LEASE, ASSIGN, SUBCONTRACT ANY BARGAINING UNIT WORK TO ANY PERSON, PARTNERSHIP, CORPORATION OR BUSINESS ENTERPRISES UNTIL OR UNLESS ALL OF EMPLOYER'S EQUIPMENT AND WORK FORCE IS ENGAGED, AND/OR THE EMPLOYER DOES NOT OWN THE NECESSARY EQUIPMENT TO PERFORM SAID WORK.

4.2 IN ORDER TO PROTECT THE WAGES, WORKING CONDITIONS AND JOB OPPORTUNITIES OF WORKMEN EMPLOYED UNDER THIS AGREEMENT, IT IS AGREED THAT IF THE CONTRACTOR SUBCONTRACTS ANY WORK ON ANY CONSTRUCTION PROJECT COVERED BY THIS AGREEMENT SUCH SUBCONTRACT SHALL PROVIDE THAT THE SUBCONTRACTOR SHALL ABIDE BY ALL OF THE TERMS OF THIS AGREEMENT IN PERFORMING SUCH WORK FOR THE DURATION THEREOF, INCLUDING THE SPREADING ON THE CONSTRUCTION SITE OF THE ROAD BED OF ANY STABILIZED BASE MATERIAL TO BE USED FOR SUBSURFACE WHICH SHALL INCLUDE BUT NOT BE LIMITED TO FILL, POZ-O-PAC, AGGREGATE MATERIALS, BITUMINOUS AGGREGATE MATERIALS, CEMENT AGGREGATE MATERIALS, OR ANY OTHER TRADE NAME OF BASE OR PAVING MATERIALS, OR THE STOCKPILING OF SUCH MATERIALS. THE CONTRACTOR SHALL NEITHER SUBLET NOR HIRE ANY SUCH EMPLOYERS UNLESS THE EMPLOYEES OF SUCH EMPLOYERS ARE PAID AN AMOUNT EQUAL TO THE WAGES AND FRINGE BENEFITS BEING PAID TO EMPLOYEES WORKING UNDER THIS AGREEMENT.

4.3 THE SUBCONTRACT SHALL FURTHER REQUIRE THE SUBCONTRACTOR TO SIGN AN AGREEMENT WITH THE UNION REQUIRING THE SUBCONTRACTOR TO MAKE PAYMENTS TO THE HEALTH AND WELFARE FUND AND THE PENSION FUND, REFERRED TO IN ARTICLES 10 AND 11 OF THIS AGREEMENT. SUCH PAYMENTS SHALL BE MADE ONLY FOR WORK PERFORMED ON THE PARTICULAR PROJECT BY THE SUBCONTRACTORS EMPLOYEES. SUCH PAYMENTS SHALL BE MADE TO THE SAME TRUSTS, IN THE SAME AMOUNTS AND UPON THE SAME

TERMS AND CONDITIONS AS REQUIRED OF THE CONTRACTOR UNDER THIS AGREEMENT. THE CONTRACTOR SHALL BE A GUARANTOR FOR SUCH PAYMENTS.

4.4 IN THE EVENT A CONTRACTOR, SUBCONTRACTOR OR OWNER/DRIVER OR DRIVERS FAILS TO COMPLY WITH THE PROVISIONS OF THIS ARTICLE, THE CONTRACTOR SHALL BE CONSIDERED IN DIRECT VIOLATION OF THIS AGREEMENT. THE CONTRACTOR, SUBCONTRACTOR OR OWNER-DRIVER OR DRIVERS SHALL WITHIN SEVENTY-TWO (72) HOURS AFTER RECEIVING NOTICE EXCLUDING SUNDAYS AND HOLIDAYS INVESTIGATE AND MEET WITH THE UNION TO ADJUST OR COMPLY WITH THE REQUIREMENT. IF AN AGREEMENT OR SETTLEMENT IS NOT REACHED, IT SHALL BE SUBMITTED TO THE GRIEVANCE AND ARBITRATION PROCEDURE OF ARTICLE 7.

4.5 THE EMPLOYER AGREES THAT HE WILL NOT SUBCONTRACT WORK TO ANY OWNER/OPERATOR OR OWNER/DRIVER UNLESS THERE IS FULL COMPLIANCE WITH THE SUBCONTRACTING CLAUSE SET FORTH IN THIS ARTICLE SO THAT ALL OWNER/OPERATORS OR OWNER/DRIVERS PERFORMING WORK MUST BE PAID AN AMOUNT EQUAL TO THE WAGES AND FRINGE BENEFITS BEING PAID TO EMPLOYEES WORKING UNDER THIS AGREEMENT. THE EMPLOYER AGREES TO ASSUME ANY LIABILITY FOR FAILURE OF ANY ONE PERFORMING WORK COVERED BY THIS AGREEMENT WHO IS NOT BEING PAID THE PROPER RATES.

## *ARTICLE 5 - PRE-JOB CONFERENCE*

5.1(A) BEFORE COMMENCING ANY JOB, THE EMPLOYER SHALL MEET WITH THE UNION TO CONDUCT AND PARTICIPATE IN A PRE-JOB CONFERENCE FOR THE PURPOSE OF ADVISING THE UNION OF THE EMPLOYER'S REQUIREMENTS AS TO THE NUMBER OF EMPLOYEES, THE PROBABLE STARTING DATE, DURATION OF THE JOB, WORKING SCHEDULES AND OTHER MATTERS AFFECTING EMPLOYEES. ALL CONTRACTORS SHALL PROVIDE A LIST OF SUBCONTRACTORS AND OWNER-DRIVER OR DRIVERS TO THE LOCAL UNION THREE (3) WORKING DAYS PRIOR TO THE COMMENCEMENT OF WORK.

5.1(B) ANY EMPLOYER UTILIZING SUBCONTRACTORS MUST PARTICIPATE IN A PRE-JOB CONFERENCE FOR ALL WORK COVERED BY THE LOCAL UNION PRIOR TO THE COMMENCEMENT OF WORK COVERED BY THIS AGREEMENT.

5.2 WHEN A PROJECT IS WITHIN THE TERRITORY OF MORE THAN ONE LOCAL UNION, THE DETERMINATION OF THE DIVISION OF EMPLOYEES FOR REPRESENTATION PURPOSES SHALL BE MADE BY AN AGREEMENT BETWEEN THE LOCAL UNION AND THE EMPLOYER. IN THE EVENT THE LOCAL UNION AND THE EMPLOYER ARE UNABLE TO REACH SUCH AN AGREEMENT, THE ISSUE

SHALL BE REFERRED WITHIN FIVE (5) WORKING DAYS TO TEAMSTERS JOINT COUNCIL NO. 25. A REPRESENTATIVE OF TEAMSTERS JOINT COUNCIL NO. 25 SHALL MEET WITH THE EMPLOYER INVOLVED TO SETTLE THIS DISPUTE AND THIS DECISION SHALL BE FINAL AND BINDING ON ALL PARTIES CONCERNED. IF A CONTRACTOR EVADES A PRE-JOB CONFERENCE, THEY AUTOMATICALLY FORFEIT THEIR RIGHT TO THE GRIEVANCE PROCEDURE. THE LOCAL UNION MAY STRIKE THE PROJECT IF A CONTRACTOR FAILS TO PARTICIPATE IN SAID PRE-JOB CONFERENCE.

## *ARTICLE 6 - NO STRIKES OR LOCKOUTS*

6.1 IN VIEW OF THE FACT THAT PARTIES HAVE PROVIDED FOR AN ORDERLY PROCEDURE FOR SETTLING DIFFERENCES OF OPINIONS AND DISPUTES, THE UNION AGREES THAT FOR THE DURATION OF THIS AGREEMENT, THERE SHALL BE NO STRIKES EXCEPT AS OTHERWISE HEREIN PROVIDED AND THE EMPLOYER AGREES THAT DURING THE LIFE OF THIS AGREEMENT THERE SHALL BE NO LOCKOUTS. THE PROVISIONS OF THIS ARTICLE SHALL NOT APPLY TO ANY EMPLOYER THAT REFUSES TO FOLLOW THE PROCEDURES OUTLINED IN ARTICLE 7 GRIEVANCES AND ARBITRATION.

## *ARTICLE 7 - GRIEVANCES AND ARBITRATION*

7.1 A GRIEVANCE, FOR THE PURPOSE OF THIS AGREEMENT, IS A COMPLAINT, RELATING TO THE APPLICATION OR INTERPRETATION OF ANY PROVISION OF THIS AGREEMENT AGAINST AN EMPLOYER BY AN EMPLOYEE; EMPLOYEES OR THE UNION AND SHALL BE PROCESSED IN ACCORDANCE WITH THE FOLLOWING PROCEDURE.

7.2 A DISPUTE OR GRIEVANCE NOT RESOLVABLE BY FOREMAN OR SUPERINTENDENT SHALL BE FIRST TAKEN UP BETWEEN THE EMPLOYER AND A REPRESENTATIVE OF THE LOCAL UNION WITHIN TEN (10) WORKING DAYS AFTER THE DATE OF THE OCCURRENCE WHICH IS THE SUBJECT OF THE DISPUTE OR GRIEVANCE, OR NO ACTION SHALL BE REQUIRED.

7.3 IN THE EVENT THAT THE GRIEVANCE CANNOT BE RESOLVED WITHIN TWO (2) WORKING DAYS OF THE PROVISIONS OF 7.2, IT SHALL BE REDUCED TO WRITING AND REFERRED FOR CONFERENCE AND RESOLUTION BY A LABOR/MANAGEMENT COMMITTEE CONSISTING OF TWO (2) REPRESENTATIVES SELECTED BY THE EMPLOYER AND TWO (2) REPRESENTATIVES SELECTED BY THE UNION. THE COMMITTEE SHALL MEET AT A MUTUALLY AGREEABLE TIME AND PLACE TO HEAR EVIDENCE AND ARGUMENTS OF THE PARTIES TO THE GRIEVANCE AND ATTEMPT TO REACH A RESOLUTION, PROVIDED, HOWEVER, THAT THE COMMITTEE MEETING MUST TAKE PLACE WITHIN FIFTEEN (15)

CALENDAR DAYS OF THE MEETING PROVIDED FOR IN ABOVE, UNLESS WRITTEN AGREEMENT TO EXTEND TIME LIMITS IS OBTAINED.

7.4 IN THE EVENT THE COMMITTEE IS DEADLOCKED, THE MOVING PARTY MAY SUBMIT THE GRIEVANCE TO ARBITRATION FOR FINAL AND BINDING RESOLUTION BY SERVING WRITTEN NOTICE OF ITS INTENT WITHIN THIRTY (30) CALENDAR DAYS OF THE LABOR/MANAGEMENT COMMITTEE MEETING. THE ARBITRATOR SHALL BE JOINTLY SELECTED FROM A PANEL OF FIVE POTENTIAL ARBITRATORS PROVIDED BY THE AMERICAN ARBITRATION ASSOCIATION AND/OR THE FEDERAL MEDIATION AND CONCILIATION SERVICE. EACH PARTY SHALL ALTERNATELY STRIKE NAMES FROM THE LIST, THE MOVING PARTY STRIKING THE FIRST UNTIL ONE ARBITRATOR REMAINS.

7.5 NO ACTION SHALL BE REQUIRED ON EMPLOYEE COMPLAINTS AS TO WAGES AND WORKING CONDITIONS UNLESS MADE WITHIN TEN (10) WORKING DAYS OF THE SUPPOSED VIOLATION.

7.6 THE EXPENSE OF THE ARBITRATOR SHALL BE JOINTLY PAID BY THE EMPLOYER AND THE LOCAL UNION BETWEEN WHOM THE GRIEVANCE OR DISPUTE EXISTS.

7.7 THE ARBITRATOR SHALL HAVE NO AUTHORITY TO ADD TO, DETRACT FROM, OR IN ANY WAY ALTER THE PROVISION OF THIS AGREEMENT.

7.8(A) NO EMPLOYER SHALL SIT ON A PANEL OF THE LABOR/MANAGEMENT COMMITTEE WHICH IS HEARING OR CONSIDERING A GRIEVANCE OR DISPUTE ARISING FROM HIS OWN OPERATIONS.

7.8(B) NO LOCAL UNION SHALL SIT ON A PANEL OF THE LABOR/MANAGEMENT COMMITTEE WHICH IS HEARING OR CONSIDERING A GRIEVANCE OR DISPUTE ARISING FROM A JOB OVER WHICH SUCH LOCAL UNION HAS GEOGRAPHICAL JURISDICTION.

7.9 WHEN THE LABOR/MANAGEMENT COMMITTEE, BY A MAJORITY VOTE, DECIDES A DISPUTE OR GRIEVANCE, SUCH DECISION SHALL BE FINAL AND BINDING ON ALL PARTIES.

7.9(A) ALL MONETARY ISSUES REGARDING A GRIEVANCE THAT HAS BEEN RESOLVED EITHER BY COMMITTEE DECISION OR MUTUAL SETTLEMENT, SHALL BE SATISFIED WITHIN THIRTY (30) CALENDAR DAYS OF FORMAL NOTIFICATION OF THE DECISION OR DATE OF SETTLEMENT.

*ARTICLE 8 - JURISDICTIONAL DISPUTE*

8.1 ALL JURISDICTIONAL DISPUTES BETWEEN OR AMONG BUILDING AND CONSTRUCTION TRADE UNIONS AND THE EMPLOYER SIGNATORY TO THIS AGREEMENT SHALL BE SETTLED AND ADJUSTED ACCORDING TO THE PRESENT PLAN ESTABLISHED BY THE BUILDING AND CONSTRUCTION TRADES DEPARTMENT OR ANY OTHER PLAN OR METHOD OF PROCEDURE THAT MAY BE ADOPTED IN THE FUTURE BY THE BUILDING AND CONSTRUCTION TRADES DEPARTMENT. DECISIONS RENDERED SHALL BE FINAL, BINDING AND CONCLUSIVE REGARDING ALL PARTIES.

*ARTICLE 9 - WAGES*

9.1 THE FOLLOWING RATES OF HOURLY PAY SHALL PREVAIL DURING THE PERIOD HEREIN SET FORTH.

WORK OR SERVICES PERFORMED AT THE CONSTRUCTION SITE WHICH INCLUDES DRIVING TRUCKS TO AND FROM AND THE SPREADING ON THE CONSTRUCTION SITE OR THE ROAD BED OF ANY BASE MATERIAL TO BE USED FOR SUCH A SUB SURFACE WHICH SHALL INCLUDE BUT NOT BE LIMITED TO FILL, GRAVEL, BLACKTOP, CEMENT, OR POZ-O-PAC, AND BUILDING, WRECKING, EXCAVATING AND RENOVATION SHALL BE COVERED BY THE HOURLY RATES SET FORTH AS FOLLOWS:

9.2 THE TRUCKS LISTED IN THIS SECTION SHALL BE CLASSIFIED AND DRIVERS PAID ON THE FOLLOWING BASIS:

***WAGES - ALL CLASSIFICATIONS:***

EFFECTIVE: JUNE 1, 2006 $26.55 PER HOUR
(HOURLY WAGE BASED UPON ALLOCATION OF JUNE 1, 2006 $1.75 RAISE)

EFFECTIVE: JUNE 1, 2006 ........ $1.75 ***PER HOUR***
***to be allocated at the sole discretion of the Union***

EFFECTIVE: JUNE 1, 2007......... ***$1.85 PER HOUR***
***to be allocated at the sole discretion of the Union***

EFFECTIVE: JUNE 1, 2008 ........ ***$2.00 PER HOUR***
***to be allocated at the sole discretion of the Union***

ALL MONETARY GAINS SHALL BE RETROACTIVE TO JUNE 1, 2006.

***CLASSIFICATION***

GROUP 1-2 OR 3 AXLE TRUCKS

GROUP 2-4 AXLE TRUCKS

GROUP 3-5 AXLE TRUCKS

GROUP 4 – 6 AXLE TRUCKS
STREET SWEEPER

GROUP 5 – 6 OR MORE

9.3 THE CLASSIFICATIONS LISTED IN THIS SECTION SHALL BE PAID ON THE FOLLOWING BASIS:

***GROUP 1***

FRAME TRUCK WHEN USED FOR TRANSPORTATION PURPOSES

AIR COMPRESSORS AND WELDING MACHINES, INCLUDING THOSE PULLED BY CARS, PICK-UP TRUCKS AND TRACTORS, RUBBER TIRE TRACTORS OR TRACK END LOADERS

AMBULANCES

BATCH GATE LOCKERS

CAR AND TRUCK WASHERS

CARRY ALLS

FORK LIFTS AND HOISTERS

HELPERS

MECHANICS HELPER AND GREASERS

PAVEMENT BREAKERS

POLE TRAILER, UP TO 40 FEET

POWER MOWER TRACTORS

SELF-PROPELLED CHIP SPREADER

SHIPPING AND RECEIVING CLERKS AND CHECKERS

SKIPMAN

STREET SWEEPERS

CONVEYOR TRUCKS

UNSKILLED DUMPMEN

WAREHOUSEMEN AND DOCKMEN

TRUCK DRIVERS HAULING WARNING LIGHTS, BARRICADES AND PORTABLE TOILETS ON JOB SITE

***GROUP 2***

DISPATCHER

DUMP CRETS AND ADGETORS UNDER 7 YARDS

DUMPSTERS, TRACK TRUCKS, EUCLIDS, HUG BOTTOM DUMP TURNAPULLS, OR TURNTRAILERS WHEN PULLING OTHER THAN SELF LOADING EQUIPMENT OR SIMILAR EQUIPMENT UNDER SIXTEEN (16) CUBIC YARDS

WINCH TRUCKS, 2-AXLES

***GROUP 3***

DUMP CRETS AND ADGETORS SEVEN (7) YARDS AND OVER

DUMPSTERS, TRACK TRUCKS, EUCLIDS, HUG BOTTOM DUMP TURNAPULLS OR TURNTRAILERS WHEN PULLING OTHER THAN SELF-LOADING EQUIPMENT OR SIMILAR EQUIPMENT OVER SIXTEEN (16) CUBIC YARDS

BULK TANK TRUCKS

DRY BATCH TRUCKS

FLAT BED TRAILERS

BUSES

DUMP OR CONVEYOR TRUCKS

FUEL TRUCKS

GREASE TRUCKS

LOW BOYS

SERVICE TRUCKS

SCISSOR TRUCKS

TELESCOPE TRUCKS

WATER TRUCKS

SUPPLY AND UTILITY TRUCKS

ALL TRUCKS FIVE – SIX AXLE OR MORE

9.4 THE EMPLOYER AGREES TO COMPENSATE THE EMPLOYEES THE ESTABLISHED WAGE RATES WHEN ENGAGED IN CONSTRUCTION WORK COVERED BY THE DAVIS BACON ACT. ANY AND ALL WORK PERFORMED ON ANY PROJECT HAVING A PREDETERMINED WAGE SETTING OR COVERED BY A GOVERNMENTAL WAGE REQUIREMENT, SUCH AS THE ILLINOIS PREVAILING WAGE ACT AND/OR THE DAVIS BACON ACT, SHALL BE PAID AT THE RATES CONTAINED WITHIN THE AREA CONSTRUCTION AGREEMENT (MARBA).

9.5 DRIVERS OPERATING DIFFERENT TYPES AND SIZES OF EQUIPMENT ON THE SAME DAY WHICH THEY OPERATE FOR TWO (2) HOURS OR MORE SHALL BE PAID THE RATE GOVERNING THE HIGHEST RATED EQUIPMENT OPERATED FOR THE ENTIRE DAY.

9.6(A) THE EMPLOYER AGREES TO NOTIFY THE UNION REPRESENTATIVE WHEN USING NEW TYPES OF EQUIPMENT NOT FORMERLY USED BY THE EMPLOYER, THE NEGOTIATING COMMITTEE OF THE EMPLOYER AND THE UNION SHALL

EXPLOSIVES AND/OR FISSION MATERIAL TRUCKS

MOBILE CRANES WHILE IN TRANSIT

OIL DISTRIBUTORS

POLE TRAILER, OVER FORTY (40) FEET

POLE AND EXPANDABLE TRAILERS HAULING MATERIAL OVER FIFTY (50) FEET LONG

PRE-CAST CONCRETE AND PIPE

SLURRY TRUCKS

WINCH TRUCKS, THREE (3) AXLES OR MORE

MECHANIC – TRUCK WELDER AND TRUCK PAINTER

ARTICULATING DUMP TRUCKS

***GROUP 4***

ASPHALT PLANT OPERATORS

DUAL-PURPOSE VEHICLES, SUCH AS MOUNTED CRANE TRUCKS WITH HOIST AND ACCESSORIES

FOREMAN

MASTER MECHANIC

SELF-LOADING EQUIPMENT LIKE P.B. AND TRUCKS WITH SCOOPS ON THE FRONT

PORTABLE CRUSHERS, CONVEYORS AND END LOADERS FEEDING THE PORTABLE CRUSHER

SIX (6) AXLE TRUCKS

STREET SWEEPER

***GROUP 5***

MEET TO IMMEDIATELY NEGOTIATE THE WAGE SCALE FOR SAME. THE AGREED RATE SHALL BE RETROACTIVE TO THE EQUIPMENT'S FIRST DAY OF USE.

9.6(B) THE EMPLOYER SHALL ASSIGN TO THE TEAMSTERS ANY TECHNOLOGICAL CHANGE, ADVANCE, PROCESS, PROCEDURE, INTRODUCTION OF ANY NEW METHOD OR MACHINERY THAT REPLACES, MODIFIES OR ELIMINATES WORK THAT HAS TRADITIONALLY BEEN PERFORMED BY THE TEAMSTERS.

9.7 AN EMPLOYEE'S PAY SHALL START AT WHATEVER TIME THE EMPLOYEE REPORTS FOR WORK AS INSTRUCTED BY THE EMPLOYER, OR AS PROVIDED FOR IN ARTICLE 13.3 AND SHALL NOT STOP UNTIL HIS TRUCK IS THROUGH WORK, INCLUDING FILLING WITH FUEL AND THE CHECKING OF OIL IF REQUESTED BY THE EMPLOYER.

9.8 ALL EMPLOYEES SHALL BE PAID WEEKLY AND NO MORE THAN FIVE (5) DAYS SHALL BE WITHHELD. THE EMPLOYEE'S PAYCHECK MUST BE READY FOR HIM NOT LATER THAN QUITTING TIME ON THE DESIGNATED PAYDAY.

9.9 THE EMPLOYERS SHALL LIST ON EACH EMPLOYEE'S CHECK STUB THE AMOUNT OF STRAIGHT TIME HOURS AND THE AMOUNT OF OVERTIME HOURS AS WELL AS ALL DEDUCTIONS FROM THE EMPLOYEE'S CHECK.

9.10 AN EMPLOYEE WHO WAS INJURED ON THE JOB, AND IS SENT HOME, OR TO A HOSPITAL OR WHO MUST OBTAIN MEDICAL ATTENTION, SHALL CONTINUE TO RECEIVE PAY AT THE APPLICABLE HOURLY RATE FOR THE BALANCE OF HIS REGULAR STRAIGHT TIME SHIFT ON THAT DAY. AN EMPLOYEE WHO HAS RETURNED TO HIS REGULAR DUTIES AFTER SUSTAINING A COMPENSABLE INJURY WHO IS REQUIRED BY THE EMPLOYER'S DOCTOR TO RECEIVE ADDITIONAL MEDICAL TREATMENT DURING HIS REGULARLY SCHEDULED WORKING HOURS SHALL RECEIVE HIS REGULAR HOURLY RATE OF PAY FOR THE STRAIGHT TIME HOURS LOST FROM WORK.

9.11 *PREVAILING WAGE RATE:* THE EMPLOYER AGREES THAT ON ANY STATE, FEDERAL, OR MUNICIPAL PROJECT REQUIRING THE PAYMENT OF THE PREVAILING AREA STANDARD WAGE, THE EMPLOYER SHALL BE BOUND TO PAY THE STATE CERTIFIED PREVAILING RATE FOR WAGES AND FRINGE BENEFITS AND MAY RELY UPON THE CONTRACT RATES ONLY IF THE TOTAL PACKAGE REGARDING WAGES, WELFARE AND PENSION ARE GREATER THAN THE CERTIFIED PREVAILING RATE FOR WORK OF LIKE NATURE PERFORMED IN THIS LOCALE.

## ***ARTICLE 10 - HEALTH AND WELFARE FUND***

10.1(A) *EFFECTIVE JUNE 1, 2006*, THE EMPLOYER SHALL PAY THE APPLICABLE RATE PER WEEK FOR EACH REGULAR EMPLOYEE COVERED BY THIS AGREEMENT WHO PERFORMS ANY WORK IN SUCH WEEK INTO A TRUST FUND SET UP BY THE TRUST AGREEMENT NOW IN EFFECT IN THE AFOREMENTIONED LOCAL UNION FOR THE PAYMENT OF HEALTH AND WELFARE BENEFITS AS DETERMINED BY THE FUNDS BOARD OF TRUSTEES.

*EFFECTIVE: JUNE 1, 2006............... $260.00 PER WEEK/PER EMPLOYEE*

*EFFECTIVE: JUNE 1, 2007...........* *to be allocated at the sole discretion of the Union*

*EFFECTIVE: JUNE 1, 2008...........* *to be allocated at the sole discretion of the Union*

IT IS HEREBY AGREED THAT THE ABOVE DISTRIBUTION OF THE WAGES, HEALTH AND WELFARE AND PENSION CONTRIBUTIONS MAY BE MODIFIED IF NECESSARY TO MAINTAIN APPROPRIATE HEALTH AND WELFARE COVERAGE. SUCH NOTIFICATION OF MODIFICATIONS SHALL BE GIVEN THIRTY (30) DAYS PRIOR TO THE EFFECTIVE DATE OF THE INCREASES.

10.1(B) ANY DISAGREEMENT WITH RESPECT TO THE ELIGIBILITY, TIME AND METHOD OF PAYMENTS, PAYMENTS DURING PERIODS OF EMPLOYEE ILLNESS OR DISABILITY, METHOD OF ENFORCEMENT OF PAYMENT AND RELATED MATTERS SHALL BE DETERMINED BY SUCH TRUSTEES. THE FUND SHALL IN ALL RESPECTS BE ADMINISTERED IN ACCORDANCE WITH THE TRUST AGREEMENT. THE METHOD AND AMOUNT OF PAYMENT SHALL BE AS FOLLOWS:

THE AMOUNT IN EFFECT, PER EMPLOYEE PER WEEK SHALL BE CONTRIBUTED FOR EACH REGULAR EMPLOYEE OTHER THAN CASUAL OR EMERGENCY EMPLOYEES, COVERED UNDER THE COLLECTIVE BARGAINING AGREEMENT FOR ANY WEEK IN WHICH SUCH EMPLOYEE PERFORMS ANY SERVICE FOR THE EMPLOYER.

10.1(C) PAYMENT SHALL BE MADE ON CASUAL OR EMERGENCY EMPLOYEES WHO ARE DEFINED FOR THIS PURPOSE ONLY AS EMPLOYEES WHO ARE NOT REGULARLY SCHEDULED EMPLOYEES AND SUCH PAYMENT SHALL BE MADE FOR THE DAYS ACTUALLY WORKED AT THE RATE OF 1/5TH OF THE WEEKLY RATE PER DAY WORKED.

10.1(D) IF ANY REGULAR EMPLOYEE IS ABSENT BECAUSE OF NON-OCCUPATIONAL ILLNESS OR INJURY, THE EMPLOYER SHALL CONTINUE TO MAKE THE REQUIRED CONTRIBUTION FOR A PERIOD OF FOUR (4) WEEKS.

10.1(E) IF ANY REGULAR EMPLOYEE IS ABSENT BECAUSE OF OCCUPATIONAL ILLNESS OR INJURY, THE REQUIRED CONTRIBUTION SHALL BE MADE UNTIL THE EMPLOYEE RETURNS TO WORK, OR FOR A PERIOD OF TWELVE (12) MONTHS, WHICHEVER IS THE SHORTER.

10.1(F) THE OBLIGATION TO MAKE THE ABOVE CONTRIBUTIONS SHALL CONTINUE DURING PERIODS WHEN THE COLLECTIVE BARGAINING AGREEMENT IS BEING NEGOTIATED, EXCEPT DURING A STRIKE.

10.1(G) THE EMPLOYER AGREES THAT IT IS BOUND BY AND IS A PARTY TO THE TRUST AGREEMENT CREATING THE HEALTH AND WELFARE FUND, AND ALL PRIOR AND SUBSEQUENT AMENDMENTS THERETO, AS IF IT HAD SIGNED THE ORIGINAL COPY OF THE SAID TRUST AGREEMENT, OF WHICH SAID AGREEMENT BEING INCORPORATED HEREIN BY REFERENCE AND MADE A PART HEREOF; THE EMPLOYER HEREBY DESIGNATES AS ITS REPRESENTATIVES ON THE BOARD OF TRUSTEES OF SAID FUND SUCH TRUSTEES AS ARE NAMED IN SAID AGREEMENTS AND DECLARATIONS OF TRUST, AS EMPLOYER TRUSTEES, TOGETHER WITH THEIR SUCCESSORS SELECTED IN THE MANNER PROVIDED IN SAID AGREEMENTS AND DECLARATIONS OF TRUST, AS THEY MAY BE AMENDED FROM TIME TO TIME; AND FURTHER AGREES TO BE BOUND BY ALL ACTION TAKEN BY SAID EMPLOYER TRUSTEES REGARDING AND PURSUANT TO THE SAID AGREEMENTS AND DECLARATIONS OF TRUST AS AMENDED FROM TIME TO TIME.

10.1(H) ***PENALTY FOR FAILURE TO PAY HEALTH AND WELFARE.***

THE EMPLOYER RECOGNIZES THE NECESSITY OF MAKING PROMPT HEALTH AND WELFARE CONTRIBUTIONS, DUE TO THE POSSIBILITY THAT EMPLOYEES BENEFIT STANDING COULD BE PLACED IN JEOPARDY IF CONTRIBUTIONS ARE NOT TIMELY MADE AND THE CONCERN OF THE UNION THAT ALL ELIGIBLE EMPLOYEES ARE COVERED BY SUCH CONTRIBUTIONS.

WHENEVER THE EMPLOYER IS DELINQUENT IN MAKING PAYMENTS TO THE HEALTH AND WELFARE FUND, THE UNION MAY STRIKE THE EMPLOYER TO FORCE PAYMENTS. THIS PROVISION SHALL NOT BE SUBJECT TO AND IS SPECIFICALLY EXCLUDED FROM THE GRIEVANCE PROCEDURE CONTAINED WITHIN THIS AGREEMENT. ADDITIONALLY, IN THE EVENT THE EMPLOYER HAS BEEN FOUND TO BE DELINQUENT, THE EMPLOYER SHALL BE REQUIRED TO PAY IN AN ADDITION TO THE ACTUAL DELINQUENCY, TWENTY PERCENT (20%) OF THE DELINQUENT AMOUNT AS LIQUIDATED DAMAGES IN ADDITION TO ALL REASONABLE ACCOUNTANT FEES AND COST OF COLLECTIONS INCLUDING ALL COURT COSTS.

10.1(I) A CALENDAR WEEK IS SUNDAY THROUGH SATURDAY. THE EMPLOYER AND THE UNION AGREE THAT THE CONTRIBUTION AMOUNTS SET FORTH ABOVE ARE INTENDED TO COVER THE COST OF BENEFITS PROVIDED BY THE WELFARE FUND, AS WELL AS THE EMPLOYER PORTION OF ANY PAYROLL OR OTHER TAXES THAT MAY BECOME DUE AS A RESULT OF THE PAYMENT OF BENEFITS.

10.1(J) *SURETY BOND.* ANY EMPLOYER WHO IS FOUND TO BE IN VIOLATION OF THE WAGE OR BENEFIT CONTRIBUTION RATES AS PROVIDED BY THE AGREEMENT SHALL DEPOSIT WITH THE OFFICE OF THE LOCAL UNION OR TRUST, AS APPLICABLE, A SURETY BOND TO GUARANTEE THE PAYMENT OF SUCH WAGE AND BENEFIT CONTRIBUTIONS. THE AMOUNT OF THE BOND SHALL BE $50,000. DETERMINATION OF THE DELINQUENCY SHALL BE MADE BY THE TRUSTEES OF THE TRUST FUND AND IN THE CASE OF WAGES BY THE UNION.

## *ARTICLE 11 - PENSION FUND*

11.1(A) *EFFECTIVE JUNE 1, 2006*, THE EMPLOYER SHALL PAY THE APPLICABLE RATE PER WEEK PER EMPLOYEE INTO A TRUST FUND FOR THE PURPOSE OF PROVIDING PENSION BENEFITS TO EMPLOYEES COVERED BY THIS AGREEMENT.

*EFFECTIVE: JUNE 1, 2006............... $138.00 PER WEEK/PER EMPLOYEE*

*EFFECTIVE: JUNE 1, 2007...........* *to be allocated at the sole discretion of the Union*

*EFFECTIVE: JUNE 1, 2008...........* *to be allocated at the sole discretion of the Union*

IT IS AGREED THAT THE ABOVE DISTRIBUTION OF THE WAGES, HEALTH AND WELFARE AND PENSION CONTRIBUTIONS MAY BE MODIFIED IF NECESSARY TO MAINTAIN APPROPRIATE PENSION COVERAGE. SUCH NOTIFICATION OF MODIFICATIONS SHALL BE GIVEN THIRTY (30) DAYS PRIOR TO THE EFFECTIVE DATE OF THE INCREASES.

11.1(B) THE PENSION FUND SHALL BE ADMINISTERED BY A BOARD OF TRUSTEES AND IN ALL RESPECTS IN ACCORDANCE WITH THE TRUST AGREEMENT. ANY DISAGREEMENT WITH RESPECT TO THE ELIGIBILITY, TIME AND METHOD OF PAYMENTS, PAYMENTS DURING PERIODS OF EMPLOYEE ILLNESS OR DISABILITY, METHOD OF ENFORCEMENT OF PAYMENT AND RELATED MATTERS SHALL BE DETERMINED BY SUCH TRUSTEES. THE METHOD AND AMOUNT OF PAYMENT SHALL BE AS FOLLOWS:

11.1(C) A CALENDAR WEEK IS SUNDAY THROUGH SATURDAY. STARTING WITH THE FIRST WORKED DAY OF THE WEEK, THE EMPLOYER WILL PAY TWENTY-FIVE PERCENT (25%) OF THE WEEKLY CONTRIBUTION RATE TO THE SUBURBAN TEAMSTERS OF NORTHERN ILLINOIS PENSION FUND(S) FOR EACH DAY THE EMPLOYEE WORKED, WITH A CAP OF FOUR (4) DAYS.

11.1(D) IF ANY REGULAR EMPLOYEE IS ABSENT BECAUSE OF NON-OCCUPATIONAL ILLNESS OR INJURY, THE EMPLOYER SHALL CONTINUE TO MAKE REQUIRED CONTRIBUTIONS FOR A PERIOD OF FOUR (4) WEEKS AT THE APPLICABLE RATE PER WEEK PER MEMBER IN EFFECT.

11.1(E) IF ANY REGULAR EMPLOYEE IS ABSENT BECAUSE OF OCCUPATIONAL ILLNESS OR INJURY, THE REQUIRED CONTRIBUTION SHALL BE MADE UNTIL THE EMPLOYEE RETURNS TO WORK, OR FOR A PERIOD OF TWELVE (12) MONTHS, WHICHEVER IS THE SHORTER.

11.1(F) THE OBLIGATION TO MAKE THE ABOVE CONTRIBUTIONS SHALL CONTINUE DURING PERIODS WHEN THE COLLECTIVE BARGAINING AGREEMENT IS BEING NEGOTIATED, EXCEPT DURING A STRIKE.

11.1(G) THE EMPLOYER AGREES THAT IT IS BOUND BY AND IS A PARTY TO THE TRUST AGREEMENT CREATING THE PENSION FUND, AND ALL PRIOR AND SUBSEQUENT AMENDMENTS THERETO, AS IF IT HAD SIGNED THE ORIGINAL COPY OF THE SAID TRUST AGREEMENT, SAID AGREEMENT BEING INCORPORATED HEREIN BY REFERENCE AND MADE A PART HEREOF, THE EMPLOYER HEREBY DESIGNATES AS ITS REPRESENTATIVES ON THE BOARD OF TRUSTEES OF SAID FUND SUCH TRUSTEES AS ARE NAMED IN SAID AGREEMENT AND DECLARATION OF TRUST, AS EMPLOYER TRUSTEES, TOGETHER WITH THEIR SUCCESSORS SELECTED IN THE MANNER PROVIDED IN SAID AGREEMENT AND DECLARATION OF TRUST, AS IT MAY BE AMENDED FROM TIME TO TIME; AND FURTHER AGREES TO BE BOUND BY ALL ACTION TAKEN BY SAID EMPLOYER TRUSTEES REGARDING AND PURSUANT TO THE SAID AGREEMENT AND

DECLARATION OF TRUST AS AMENDED FROM TIME TO TIME, PROVIDED THAT THE EMPLOYER DOES NOT WAIVE BUT RETAINS IN FULL MEASURE THE SAME RIGHT TO CHALLENGE ON CONSTITUTIONAL OR LEGAL GROUNDS ANY ASSESSMENT OR WITHDRAWAL LIABILITY THAT IT HAD UPON THE DATE OF ENACTMENT OF THE MULTI-EMPLOYER PENSION PLAN AMENDMENTS ACT OF 1980.

11.1(H) ***PENALTY FOR FAILURE TO PAY PENSION.***

THE EMPLOYER RECOGNIZES THE NECESSITY OF MAKING PROMPT PENSION CONTRIBUTIONS, DUE TO THE POSSIBILITY THAT EMPLOYEES BENEFIT

STANDING COULD BE PLACED IN JEOPARDY IF CONTRIBUTIONS ARE NOT TIMELY MADE, AND THE CONCERN OF THE UNION THAT ALL ELIGIBLE EMPLOYEES ARE COVERED BY SUCH CONTRIBUTIONS.

WHENEVER THE EMPLOYER IS DELINQUENT IN MAKING PAYMENTS TO THE PENSION FUND, THE UNION MAY STRIKE THE EMPLOYER TO FORCE PAYMENTS. THIS PROVISION SHALL NOT BE SUBJECT TO AND IS SPECIFICALLY EXCLUDED FROM THE GRIEVANCE PROCEDURE CONTAINED WITHIN THIS AGREEMENT. IF AN EMPLOYER FAILS TO PAY ANY CONTRIBUTIONS DUE IN ACCORDANCE WITH THIS ARTICLE, THE TRUSTEES OF THE PENSION FUND MAY ASSESS THE EMPLOYER A PENALTY OF TWENTY PERCENT (20%) OF THE CONTRIBUTIONS DUE AS LIQUIDATED DAMAGES IN ADDITION TO ALL REASONABLE ATTORNEY FEES, ACCOUNTANT FEES AND COST OF COLLECTIONS INCLUDING ALL COURT COSTS.

11.1(I) ***SURETY BOND.*** ANY EMPLOYER WHO IS FOUND TO BE IN VIOLATION OF THE WAGE OR BENEFIT CONTRIBUTION RATES AS PROVIDED BY THE AGREEMENT SHALL DEPOSIT WITH THE OFFICE OF THE LOCAL UNION OR TRUST, AS APPLICABLE, A SURETY BOND TO GUARANTEE THE PAYMENT OF SUCH WAGE AND BENEFIT CONTRIBUTIONS. THE AMOUNT OF THE BOND SHALL BE $50,000. DETERMINATION OF THE DELINQUENCY SHALL BE MADE BY THE TRUSTEES OF THE TRUST FUND AND IN THE CASE OF WAGES BY THE UNION.

## ***ARTICLE 12 - CHECK-OFF***

12.1 UPON RECEIPT OF A WRITTEN AUTHORIZATION FROM THE EMPLOYEE ON A FORM PROVIDED BY THE UNION, THE EMPLOYER AGREES TO DEDUCT INITIATION FEES, RE-INITIATION FEES AND MONTHLY UNION DUES FROM THE PAY OF EACH SUCH EMPLOYEE IN THE AMOUNT AND MANNER PRESCRIBED BY THE UNION IN ACCORDANCE WITH ITS CONSTITUTION AND BY-LAWS AND SHALL REMIT SAME TO THE UNION WITHIN TEN (10) DAYS FROM ITS COLLECTION.

12.2 THE UNION SHALL INDEMNIFY, DEFEND AND SAVE THE EMPLOYER HARMLESS AGAINST ANY AND ALL CLAIMS, DEMANDS, SUITS OR OTHER FORMS OF LIABILITY THAT SHALL ARISE OUT OF OR BY REASONS OF ACTION TAKEN, OR NOT TAKEN, BY THE EMPLOYER FOR THE PURPOSE OF COMPLYING WITH ANY PROVISIONS OF THIS ARTICLE ON RELIANCE UPON ANY LISTS, NOTICES, OR ASSIGNMENTS FURNISHED PURSUANT TO THIS ARTICLE.

## ***ARTICLE 13 - WORKING HOURS AND OVERTIME***

13.1 EIGHT (8) CONTINUOUS HOURS (NOT INCLUDING MEAL PERIOD REFERRED TO IN ARTICLE 13.7) SHALL CONSTITUTE A WORK DAY. FORTY (40) STRAIGHT TIME HOURS, MONDAY THROUGH FRIDAY, SHALL CONSTITUTE A WORK WEEK,

WITHOUT REGARD TO THE WEEKLY PAY PERIOD AS ESTABLISHED BY THE EMPLOYER.

13.2(A) TIME AND ONE-HALF (1½) SHALL BE PAID FOR ALL TIME WORKED OVER EIGHT (8) HOURS IN ANY ONE (1) DAY, AND OVER FORTY (40) HOURS IN ANY ONE WEEK, MONDAY THROUGH FRIDAY (AND SATURDAY WHEN AN EMPLOYEE WORKS A SATURDAY AS A MAKE-UP DAY AS DETERMINED IN THIS SECTION). EFFECTIVE UPON EXECUTION OF THIS AGREEMENT, IF AN EMPLOYEE CALLS OFF OR VOLUNTARILY LEAVES WORK BEFORE THE WORKDAY IS CONCLUDED FOR ANY REASON DURING THE MONDAY THROUGH FRIDAY WORKWEEK, THEN SATURDAY SHALL BE PAID AS A NON-PREMIUM MAKE-UP DAY. OTHERWISE, SATURDAY SHALL BE PAID AT THE APPLICABLE OVERTIME RATE OF TIME AND ONE-HALF (1½) FOR ALL HOURS WORKED.

13.2(B) IF ANY EMPLOYEE CALLS OFF AT HIS OWN INITIATIVE ON A REGULAR SCHEDULED WORKDAY DURING THE WORKWEEK AND IS PUT TO WORK ON SATURDAY AS A MAKE-UP DAY, HE SHALL BE GUARANTEED FOUR (4) CONTINUOUS HOURS OF WORK AT HIS APPLICABLE STRAIGHT-TIME HOURLY RATE OF PAY FOR THAT DAY.

13.3 EMPLOYEES STARTING WORK AFTER 12:00 NOON, SHALL BE PAID A FIFTY CENTS ($0.50) PER HOUR SHIFT DIFFERENTIAL IN ADDITION TO THEIR STRAIGHT TIME HOURLY RATE FOR ALL WORK PERFORMED ON A SECOND SHIFT. ALL HOURS CONTINUOUSLY WORKED SHALL BE DEEMED PART OF THE SAME WORKDAY THAT COMMENCED WITH THE FIRST HOUR WORKED, REGARDLESS IF THE WORK EXTENDS INTO THE NEXT CALENDAR DAY. ALL HOURS IN EACH WORKDAY AFTER THE EIGHTH HOUR SHALL BE PAID AT TIME AND ONE HALF (1½), EXCEPT ALL HOURS WORKED ON A SUNDAY SHALL BE PAID AT DOUBLE TIME.

13.4 THE EMPLOYER NOT NOTIFYING THE EMPLOYEE AT LEAST TWO (2) HOURS PRIOR TO REPORTING TIME THERE WILL BE NO WORK THAT DAY SHALL GIVE HIM TWO (2) HOURS PAY FOR REPORTING. IF REQUESTED BY THE EMPLOYER THE EMPLOYEE MUST STAY ON THE JOB TO QUALIFY FOR THE TWO (2) HOURS OF PAY. ALL REPORTING TIME SHALL BE PAID AT THE APPLICABLE HOURLY RATE FOR THAT DAY.

13.5 IF AN EMPLOYEE IS ORDERED TO START WORK BY HIS EMPLOYER, MONDAY THROUGH SATURDAY HE SHALL NOT RECEIVE LESS THAN EIGHT (8) HOURS STRAIGHT TIME PAY. IF HE STARTS WORK ON SATURDAY, SUNDAY AND HOLIDAYS HE SHALL NOT RECEIVE LESS THAN FOUR (4) HOURS PAY AT THE APPLICABLE HOURLY RATE.

13.6 ALL WORK PERFORMED ON ANY SUNDAY SHALL BE PAID AT THE RATE OF DOUBLE TIME.

13.7(A) *MEAL PERIOD.* EACH SHIFT SHALL INCLUDE AN UNPAID ONE-HALF (½) HOUR MEAL PERIOD.

13.7(B) ANY EMPLOYEE REQUIRED TO WORK THROUGH THEIR MEAL PERIOD, AND DOES WORK THROUGH THEIR MEAL PERIOD, SHALL BE PAID THE OVERTIME RATE OF TIME AND ONE-HALF (1½) FOR SUCH TIME WORKED.

13.7(C) THE ONE-HALF (½) HOUR UNPAID MEAL PERIOD SHALL COMMENCE BETWEEN THE FOURTH (4TH) AND END OF THE SIXTH (6TH) HOUR ON ALL SHIFTS.

13.7(D) ALL EMPLOYEES WHO WORK THROUGH THEIR MEAL PERIOD SHALL BE GUARANTEED NOT LESS THAN EIGHT AND ONE-HALF (8½) HOURS OF CONTINUOUS WORK PAID IN ACCORDANCE WITH THIS AGREEMENT.

## *ARTICLE 14 - GENERAL CONDITIONS*

**14.1** ***SENIORITY***

14.1(A) SENIORITY AS THE TERM IS USED HEREIN, MEANS AND LENGTH OF CONTINUOUS SERVICE OF ANY REGULAR EMPLOYEE FROM THE DATE OF FIRST EMPLOYMENT BY THE EMPLOYER AS HEREINAFTER PROVIDED.

14.1(B) NEW EMPLOYEES SHALL BE REGARDED AS PROBATIONARY EMPLOYEES UNTIL THEY HAVE ACQUIRED SENIORITY RIGHTS. PROBATIONARY EMPLOYEES SHALL ATTAIN SENIORITY RIGHTS WHEN THEY HAVE ACTUALLY BEEN AT WORK OF THE EMPLOYER FOR A TOTAL OF THIRTY (30) WORK DAYS OR SIXTY (60) CALENDAR DAYS. THERE SHALL BE NO RESPONSIBILITY FOR THE RE-EMPLOYMENT OF PROBATIONARY EMPLOYEES IF THEY ARE LAID OFF OR DISCHARGED PRIOR TO ATTAINING SENIORITY RIGHTS. AFTER THIRTY (30) WORK DAYS OR SIXTY (60) CALENDAR DAYS OF EMPLOYMENT AS ABOVE DEFINED, THE NAMES OF SUCH EMPLOYEES SHALL BE PLACED ON THE SENIORITY LIST AS PROVIDED IN SECTION 14.1 (A) WITH A SERVICE CREDIT REVERTING BACK TO THE FIRST DAY OF HIRE. THE UNION SHALL RECEIVE A SENIORITY LIST UPON REQUEST.

14.1(C) ANY EMPLOYEE COVERED BY THIS AGREEMENT WHO ACCEPTS A PROMOTION TO A SALARIED POSITION WITH THE EMPLOYER SHALL RETAIN ALL PREVIOUSLY ACCUMULATED SENIORITY FOR A PERIOD OF TWELVE (12) CONSECUTIVE MONTHS.

**14.1(D)** IN CASE OF LAYOFF DUE TO LACK OF WORK, EMPLOYEES SHALL BE LAID OFF IN REVERSE ORDER OF SENIORITY, PROVIDING THE SENIOR EMPLOYEE IS QUALIFIED TO REPLACE THE LAID-OFF EMPLOYEE.

**14.1(E)** THE RE-HIRING PROCEDURE SHALL BE THE REVERSE OF THE LAYOFF PROCEDURE. WHEN WORK INCREASES, EMPLOYEES LAID OFF SHALL BE NOTIFIED TO REPORT TO WORK IN ORDER OF SENIORITY.

**14.1(F)** FAILURE BY AN EMPLOYEE TO RETURN TO WORK WITHIN FIVE (5) CONSECUTIVE WORKING DAYS AFTER NOTICE OR ATTEMPTED NOTICE, BY CERTIFIED MAIL TO THE EMPLOYEE'S LAST KNOWN ADDRESS AND A COPY BEING SENT TO THE LOCAL UNION OFFICE, WILL RESULT IN LOSS OF SENIORITY RIGHTS. THE LOCAL UNION OFFICE SHALL BE NOTIFIED BY THE EMPLOYER THE SAME DAY AS THE EMPLOYEE. THE FIVE (5) DAYS DO NOT BEGIN UNTIL THE UNION HAS BEEN NOTIFIED BY THE EMPLOYER. THE UNION MAY FURNISH TEMPORARY DRIVERS IF REQUESTED TO DO SO, UNTIL THE LAID-OFF EMPLOYEE REPORTS TO WORK.

**14.1(G)** IF THERE ARE ANY BREAK-DOWNS OR SHUTDOWNS DURING THE DAY, A MAN WHOSE VEHICLE IS BROKEN DOWN OR WHOSE OPERATIONS ARE SHUTDOWN SHALL GO HOME FOR THE COMPLETION OF THE WORK DAY AND SHALL BE PAID AS PROVIDED IN ARTICLE 13; HOWEVER THE EMPLOYER MAY ASSIGN HIM TO PERFORM OTHER DUTIES AT HIS PREVAILING WAGE RATE FOR THAT DAY. WHEN A VEHICLE SHALL BE OUT OF SERVICE FOR MORE THAN THAT DAY, SENIORITY SHALL PREVAIL ON THE FOLLOWING DAY.

**14.1(H)** SENIORITY SHALL BE BROKEN BY DISCHARGE, VOLUNTARY QUIT, FAILURE TO REPORT AFTER FIVE (5) WORKING DAYS, AS OUTLINED IN SECTION 14.1 (F) OR BY A LAY-OFF FOR TWELVE (12) CONSECUTIVE MONTHS.

**14.1(I)** WHERE THE SAME EMPLOYER HAS MORE THAN ONE JOB IN PROGRESS, WORKING OUT OF DIFFERENT GARAGES OR PARKING SITES AND AT THE STARTING TIME OF THE JOB, DUE TO WEATHER OR OTHER CONDITIONS BEYOND THE EMPLOYER'S CONTROL, THE JOB IS NOT ABLE TO WORK AND NO DECISION CAN BE MADE AS TO WHEN THE JOB CAN GO, SUCH LAY-OFFS SHALL NOT EXCEED MORE THAN TWO (2) WORKING DAYS, AFTER THE EXPIRATION OF TWO (2) WORKING DAYS THE EMPLOYEE ACCORDING TO HIS COMPANY SENIORITY SHALL BE ENTITLED TO TRANSFER TO ANOTHER JOB OF THE EMPLOYER IF THERE ARE EMPLOYEES OF LESS SENIORITY WORKING FOR THE EMPLOYER ON ANOTHER JOB. WHEN AN EMPLOYEE REQUESTS A TRANSFER TO ANOTHER PARKING SITE SUCH EMPLOYEE SHALL STAY AT SAID PARKING SITE UNTIL ITS COMPLETION OR UNTIL EMPLOYEE IS LAID-OFF. NOTWITHSTANDING THE FOREGOING, THE EMPLOYER MAY PERMIT A TRANSFER IMMEDIATELY UPON LAY-OFF WITHOUT WAITING TWO (2) DAYS.

14.1(J) ALL EMPLOYEES DOMICILED AT THE SAME LOCATION WILL BE ASSIGNED WORK ACCORDING TO THEIR SENIORITY, PROVIDING THEY ARE QUALIFIED. THIS WILL NOT AFFECT THE DAILY STARTING TIME. (ALL EMPLOYEES GOING TO THE SAME JOB, DOING THE SAME WORK WILL BE STARTED BY SENIORITY).

14.2 WHEN HAULING BLACKTOP OR SIMILAR MATERIAL, DRIVERS SHALL HAVE A PLATFORM TO STAND ON TO ROLL THEIR TARPS AT THE PLANT.

14.3 IF THE EMPLOYEE IS DIRECTED TO TAKE A TRUCK TO A JOB SITE OR A GARAGE AND LEAVE IT AT SAME, HE SHALL BE COMPENSATED UNTIL HE RETURNS TO HIS ORIGINAL STARTING LOCATION.

14.4 WHEN AN EMPLOYEE IS INSTRUCTED TO PARK ON A JOB SITE, THE EMPLOYER SHALL WITH ALL POSSIBLE MEANS HAVE THE EMPLOYEE LIVING NEAREST TO THE PARKING SITE REPORT FOR WORK THERE, IF QUALIFIED.

## *ARTICLE 15 - LABOR WORK*

15.1 CHAUFFEURS ARE EXEMPT FROM ALL LABOR WORK EXCEPT WHEN NECESSARY TO CLEAN THEIR TRUCK BODY OR TO MAINTAIN THE SAFETY OF THEIR VEHICLES IN THE EVENT OF AN EMERGENCY OR BREAKDOWN. CHAUFFEURS MAY BE REQUIRED TO ACT AS FLAGMEN UPON REQUEST BY THE EMPLOYER. CHAUFFEURS SHALL OPERATE ONE VEHICLE ONLY, UNLESS SAID VEHICLE IS REPLACED WITH ANOTHER. CHAUFFEURS SHALL MAINTAIN THEIR TRUCKS AT THE JOB SITE FOR LOADING UNTIL QUITTING TIME.

15.2 *SUPPLY AND SERVICE TRUCK DRIVERS.* SUPPLY AND SERVICE TRUCK DRIVERS SHALL LOAD AND UNLOAD THEIR VEHICLES, EXCEPT WHERE DOING SO WILL INFRINGE ON THE WORK OF OTHER TRADES OR WHERE THE EQUIPMENT OR MATERIAL TO BE LOADED OR UNLOADED IS UNREASONABLY HEAVY AND ASSISTANCE IS NEEDED, IT SHALL BE SUPPLIED.

15.3 *DUMP MAN.* A DUMP MAN SHALL BE EMPLOYED WHEN THERE ARE TWO (2) OR MORE PIECES OF EQUIPMENT COVERED BY THIS AGREEMENT ENGAGED IN THE HAULING AND DUMPING OF DIRT, BLACKTOP, AGGREGATE AND OTHER SOLID FILLING MATERIAL. THIS PARAGRAPH SHALL ONLY APPLY IN AREAS WHERE AND WHEN IT HAS BEEN PAST PRACTICE.

## *ARTICLE 16 - NON-DISCRIMINATION*

**16.1** THE EMPLOYER AND THE UNION AGREE THEY WILL CONTINUE NOT TO DISCRIMINATE AGAINST ANY INDIVIDUAL WITH RESPECT TO THEIR HIRING, COMPENSATION, TERMS OR CONDITIONS OF EMPLOYMENT BECAUSE OF SUCH INDIVIDUAL'S RACE, COLOR, RELIGION, SEX, NATIONAL ORIGIN, OR AGE, (TO THE EXTENT PROHIBITED BY LAW) NOR WILL THEY LIMIT, SEGREGATE OR CLASSIFY EMPLOYEES IN ANY WAY TO DEPRIVE ANY INDIVIDUAL EMPLOYEE OF EMPLOYMENT OPPORTUNITIES BECAUSE OF THEIR RACE, COLOR, RELIGION, SEX NATIONAL ORIGIN, OR AGE AND THE AGE DISCRIMINATION EMPLOYMENT ACT OF 1967, AS AMENDED (TO THE EXTENT PROHIBITED BY LAW).

**16.2** WHERE MASCULINE OR FEMININE TERMS ARE UTILIZED THROUGHOUT THIS AGREEMENT, IT IS UNDERSTOOD THAT EACH APPLIES TO THE OPPOSITE SEX.

## ***ARTICLE 17 - EMPLOYMENT TERMINATION***

**17.1(A)** ***NO DISCRIMINATION:*** THERE SHALL BE NO DISCRIMINATION ON THE PART OF THE EMPLOYER AGAINST ANY EMPLOYEE NOR SHALL ANY EMPLOYEE BE DISCHARGED FOR ANY UNION ACTIVITY NOT INTERFERING WITH THE PROPER PERFORMANCE OF THEIR WORK.

**17.1(B)** THE EMPLOYER SHALL NOT DISCHARGE ANY EMPLOYEE BECAUSE OF RACE, CREED, NATIONAL ORIGIN, SEX, OR AGE; NOR BECAUSE THE EMPLOYEE HAS DEMANDED WAGES, OVERTIME OR OTHER BENEFITS TO WHICH THIS AGREEMENT ENTITLES THEM.

**17.2** ***DISCHARGE OR SUSPENSION:*** THE EMPLOYER SHALL NOT DISCHARGE OR SUSPEND ANY EMPLOYEE EXCEPT FOR JUST CAUSE. THE EMPLOYER AGREES TO APPLY THE PRINCIPLES OF PROGRESSIVE DISCIPLINE WHERE APPLICABLE AND HEREBY DECLINES AN INTENT TO UTILIZE WRITTEN REPRIMANDS, WHENEVER POSSIBLE AND APPROPRIATE, PRIOR TO THE USE OF SUSPENSION OR DISCHARGE. WHEN A WRITTEN REPRIMAND IS ISSUED, THE EMPLOYEE AND THE UNION SHALL BE FURNISHED WITH A COPY OF SUCH.

MINOR DISCIPLINARY ACTIONS IN EXCESS OF ONE (1) YEAR WITH NO FURTHER VIOLATIONS WILL NOT BE CONSIDERED AS PART OF DISCIPLINE AND MAY NOT BE USED AGAINST THE EMPLOYEE FOR ANY FUTURE DISCIPLINE.

## ***ARTICLE 18 - HOLIDAYS***

**18.1** DOUBLE TIME SHALL BE PAID FOR ALL WORK DONE ON SUNDAYS AND THE FOLLOWING LEGAL HOLIDAYS: NEW YEAR'S DAY, DECLARATION DAY, INDEPENDENCE DAY, LABOR DAY, THANKSGIVING DAY, AND CHRISTMAS DAY.

18.2 IF AN EMPLOYEE IS SCHEDULED TO WORK IN ANY WEEK WHEN ONE OF THE FOLLOWING HOLIDAYS FALL (NEW YEAR'S DAY, DECLARATION DAY, INDEPENDENCE DAY, LABOR DAY, THANKSGIVING DAY, AND CHRISTMAS DAY) WHERE THEY WOULD ONLY WORK FOUR (4) DAYS DURING THAT WEEK, THAT SATURDAY WILL BE PAID AT TIME AND ONE-HALF (1½).

## *ARTICLE 19 – VACATIONS AND LEAVES OF ABSENCE*

19.1 VACATIONS MAY BE TAKEN BY MUTUAL AGREEMENT BETWEEN THE EMPLOYER AND EMPLOYEE.

19.2 LEAVES OF ABSENCE SHALL BE GRANTED TO EMPLOYEES BY MUTUAL AGREEMENT BETWEEN THE EMPLOYER, THE LOCAL UNION AND THE EMPLOYEE. SUCH LEAVES WHEN GRANTED SHALL BE IN WRITING, BY THE EMPLOYER AND THE EMPLOYEE EACH SIGNING THREE (3) COPIES, ONE (1) COPY OF WHICH SHALL BE RETAINED BY EACH OF THEM AND THE THIRD COPY TO BE RETAINED BY THE UNION. ALL OTHER TIME OFF MUST HAVE EMPLOYER APPROVAL PRIOR TO BEING GRANTED

19.3 THE EMPLOYER WILL NOT BE RESPONSIBLE FOR CONTRIBUTIONS TO THE HEALTH AND WELFARE AND PENSION FUND DURING THIS VACATION.

## *ARTICLE 20 – OWNER-DRIVERS*

20.1 THE EMPLOYER AGREES THAT HE WILL NOT SUBCONTRACT WORK TO ANY OWNER/OPERATOR OR OWNER/DRIVER UNLESS THERE IS FULL COMPLIANCE WITH THE SUBCONTRACTING CLAUSE SET FORTH IN ARTICLE 4 SO THAT ALL OWNER/DRIVERS OR OWNER/OPERATORS PERFORMING WORK MUST BE PAID AN AMOUNT EQUAL TO THE WAGES AND FRINGE BENEFITS BEING PAID TO EMPLOYEES WORKING UNDER THIS AGREEMENT. THE EMPLOYER AGREES TO ASSUME ANY LIABILITY FOR FAILURE OF ANYONE PERFORMING THIS WORK TO BE PAID THE PROPER RATES.

## *ARTICLE 21 - MECHANIC'S TOOLS*

21.1 IF A MECHANIC'S TOOLS ARE LOST OR STOLEN DUE TO FIRE OR BURGLARY ON THE EMPLOYER'S PREMISES OR JOB SITE, THE EMPLOYER WILL REPLACE THE TOOLS AT NO COST TO THE MECHANIC. THE MECHANIC SHALL BE PAID IN ACCORDANCE WITH THE INVENTORY LIST THAT IS ON FILE WITH THE EMPLOYER PRIOR TO THE LOSS. THE EMPLOYEE SHALL UPDATE THE INVENTORY LIST ANNUALLY, IF THE EMPLOYEE FAILS TO PROVIDE THE EMPLOYER WITH SAID INVENTORY LIST, THE EMPLOYER SHALL NOT BE LIABLE

FOR SAID TOOLS. THE MAXIMUM BENEFIT PAYABLE DUE TO THEFT OR FIRE SHALL BE TWENTY-FIVE THOUSAND DOLLARS ($25,000) PLUS THE REPLACEMENT COST OF THE TOOL BOX(S) PROVIDED THE INVENTORY PROVISION OF THIS ARTICLE IS COMPLIED WITH.

21.2 THE EMPLOYER SHALL FURNISH FOR USE BY THE MECHANIC THE NECESSARY SOCKETS OVER ½ INCH DRIVE AT NO COST TO THE MECHANIC.

21.3 THERE SHALL BE AT LEAST TWO (2) EMPLOYEES ON DUTY IN THE SHOP AT ALL TIMES DURING THE NIGHT SHIFT.

## *ARTICLE 22 - JOB ACCESS BY UNION STEWARDS*

22.1 THE BUSINESS REPRESENTATIVE SHALL HAVE THE PRIVILEGE TO VISIT ANY JOB OR BARN TO ENFORCE THE PROVISIONS OF THIS AGREEMENT.

22.2 THE EMPLOYER RECOGNIZES THE RIGHT OF THE UNION TO DESIGNATE JOB STEWARDS. IF REQUESTED BY THE LOCAL UNION, THE STEWARD SHALL HAVE PREFERENCE FOR OVERTIME, SATURDAY, SUNDAY AND HOLIDAY WORK AND SHALL BE THE LAST MAN LAID OFF AT THE CONCLUSION OF A PROJECT, PROVIDED HE IS QUALIFIED TO PERFORM THE WORK. THE AUTHORITY OF JOB STEWARDS SO DESIGNATED BY THE UNION SHALL BE LIMITED TO AND SHALL NOT EXCEED, THE FOLLOWING DUTIES AND ACTIVITIES:

(A) THE INVESTIGATION AND PRESENTATION OF GRIEVANCES WITH HIS EMPLOYER OR THE DESIGNATED EMPLOYER REPRESENTATIVE IN ACCORDANCE WITH THE PROVISIONS OF THE COLLECTIVE BARGAINING AGREEMENT.

(B) THE TRANSMISSION OF SUCH MESSAGES AND INFORMATION WHICH SHALL ORIGINATE WITH, AND ARE AUTHORIZED BY THE LOCAL UNION, OR ITS OFFICERS, PROVIDED SUCH MESSAGES AND INFORMATION:

(1) HAVE BEEN REDUCED TO WRITING, OR

(2) IF NOT REDUCED TO WRITING, ARE OF A ROUTINE NATURE AND DO NOT INVOLVE WORK STOPPAGES, SLOWDOWNS, REFUSAL TO HANDLE GOODS, OR ANY OTHER INTERFERENCE WITH THE EMPLOYER'S BUSINESS.

(C) JOB STEWARDS HAVE NO AUTHORITY TO TAKE STRIKE ACTION OR ANY OTHER ACTION INTERRUPTING THE EMPLOYER'S BUSINESS.

(D) THE EMPLOYER RECOGNIZES THESE LIMITATIONS UPON THE AUTHORITY OF JOB STEWARDS AND SHALL NOT HOLD THE UNION LIABLE FOR ANY UNAUTHORIZED ACTS BY THE JOB STEWARDS. THE EMPLOYER IN SO

RECOGNIZING SUCH LIMITATIONS, SHALL HAVE THE AUTHORITY TO IMPOSE DISCIPLINE, INCLUDING DISCHARGE, IN THE EVENT THE STEWARD HAS TAKEN UNAUTHORIZED STRIKE ACTION, SLOWDOWNS, OR WORK STOPPAGE IN VIOLATION OF THIS AGREEMENT AND ANY ACTION TAKEN BY THE EMPLOYER SHALL NOT BE SUBJECT TO THE GRIEVANCE AND ARBITRATION PROCEDURE.

22.3 A JOB STEWARD SHALL BE A COMPETENT WORKING TEAMSTER.

22.4 A STEWARD SHALL NOT LEAVE THE JOB DURING WORKING HOURS UNLESS AUTHORIZED BY THE EMPLOYER.

## ***ARTICLE 23 - PROTECTION OF RIGHTS***

23.1 IT SHALL NOT BE A VIOLATION OF THIS AGREEMENT, AND IT SHALL NOT BE CAUSE FOR DISCHARGE OR DISCIPLINARY ACTION IN THE EVENT AN EMPLOYEE REFUSES TO ENTER UPON ANY PROPERTY INVOLVED IN A LAWFUL PRIMARY PICKET LINE, INCLUDING THE LAWFUL PRIMARY PICKET LINE OF UNIONS PARTY TO THIS AGREEMENT, AND INCLUDING LAWFUL PRIMARY PICKET LINES AT THE EMPLOYER'S PLACES OF BUSINESS. IN THE APPLICATION OF THIS ARTICLE IT IS IMMATERIAL IF THE LABOR DISPUTE OR PICKETING IS ILLEGAL IF THE LABOR DISPUTE OR PICKETING IS PRIMARY.

## ***ARTICLE 24 - SEPARATE AGREEMENTS***

24.1 IT IS AGREED THAT THE EMPLOYER OR THE EMPLOYEE AND THE UNION WILL NOT BE ASKED TO MAKE ANY WRITTEN OR VERBAL AGREEMENT WHICH MAY CONFLICT OR BE CONTRARY WITH THIS AGREEMENT.

## ***ARTICLE 25 - COMPLIANCE WITH SAFETY AND TRAFFIC LAWS***

25.1 NO EMPLOYEE SHALL BE RESPONSIBLE FOR THE PURCHASE OR DISPLAY OF CITY OR STATE LICENSE TAGS OR PLATES. OVERLOADING OF TRUCKS SHALL BE THE RESPONSIBILITY OF THE EMPLOYER UNLESS IT IS DUE TO EMPLOYEES NEGLIGENT OR WILLFUL ACTS. IF ANY EMPLOYEE IS ARRESTED OR IS ISSUED A SUMMONS BECAUSE OF FAULTY EQUIPMENT, FAILURE TO DISPLAY TAGS OR LICENSES, OVERLOADING OR OVERWEIGHT, HE SHALL NOT BE REQUIRED TO SURRENDER HIS CHAUFFEUR'S LICENSE IN LIEU OF BOND, AND IF HE IS THEREBY TO APPEAR IN COURT ON BEHALF OF HIS EMPLOYER, HE SHALL BE REIMBURSED FOR HIS LOST TIME AT HIS REGULAR STRAIGHT TIME HOURLY RATE OF PAY UNLESS IT IS DUE TO EMPLOYEE NEGLIGENCE. IN NO EVENT SHALL THE EMPLOYER BE RESPONSIBLE FOR THE EMPLOYEE'S ACTS SOLELY WITHIN THE CONTROL OF THE EMPLOYEE SUCH AS, BUT NOT LIMITED TO, EMPLOYEE'S VIOLATION OF TRAFFIC LAWS. WHERE AN EMPLOYEE VIOLATES TRAFFIC LAWS,

IT SHALL BE THE RESPONSIBILITY TO EITHER POST A BOND OR BOND CARD, OR TO SURRENDER HIS LICENSE.

## *ARTICLE 26 - ECONOMIC LOSS*

**26.1** EMPLOYEES COVERED BY THIS AGREEMENT RECEIVING HIGHER WAGES OR MORE ATTRACTIVE WORKING CONDITIONS THAN THOSE PROVIDED FOR IN THIS AGREEMENT SHALL SUFFER NO REDUCTION BY VIRTUE OF THIS AGREEMENT AND SHALL BE PAID THE INCREASE IN WAGES HEREIN NEGOTIATED.

## *ARTICLE 27 - INSPECTION PRIVILEGES*

**27.1** AUTHORIZED REPRESENTATIVES OF THE UNION SHALL HAVE ACCESS TO THE EMPLOYER'S ESTABLISHMENT AT ALL REASONABLE TIMES FOR THE PURPOSE OF ADJUSTING DISPUTES, INVESTIGATING WORKING CONDITIONS, COLLECTING DUES, AND ASCERTAINING COMPLIANCE WITH THIS AGREEMENT WHICH SHALL INCLUDE THE RIGHT TO INSPECT AND AUDIT THOSE SPECIFIC PAYROLL RECORDS, TIME CARDS AND SHEETS AS MAY RELATE TO A PARTICULAR GRIEVANCE OR GRIEVANCES ALLEGING NON-PAYMENT OR IMPROPER PAYMENT OF WAGES, HEALTH AND WELFARE OR PENSION CONTRIBUTIONS. SUCH RECORDS SHALL BE PRODUCED AT A PLACE MUTUALLY AGREED UPON.

**27.2** THE EMPLOYER SHALL KEEP A PERMANENT DAILY PAYROLL RECORD OF ALL EMPLOYEES AND OF HOURS WORKED BY EMPLOYEES EMPLOYED ON A TIME BASIS SHOWING STARTING AND QUITTING TIMES. NOTWITHSTANDING THE LIMITATIONS OF SECTION 27.1 ABOVE, SUCH RECORDS EFFECTIVE JUNE 1, 2006, SHALL BE PRESERVED FOR A PERIOD OF NOT LESS THAN THREE (3) YEARS AND SHALL BE SUBJECT TO EXAMINATION BY THE UNION, BUT THE EMPLOYER SHALL HAVE THE RIGHT TO BE PRESENT.

## *ARTICLE 28 - BULLETIN BOARD ACCESS*

**28.1** THE EMPLOYER SHALL PROVIDE SPACE ON AN EMPLOYER BULLETIN BOARD FOR UTILIZATION OF THE UNION FOR POSTING NOTICES FALLING WITHIN THE FOLLOWING CATEGORIES:

1.) UNION MEETINGS;

2.) UNION APPOINTMENTS;

3.) UNION ELECTIONS;

4.) RESULTS OF UNION ELECTIONS;

5.) INTERNATIONAL UNION CORRESPONDENCE AND REQUIRED POSTINGS.

THE BULLETIN BOARD SHALL NOT BE USED BY THE UNION OR ITS MEMBERS FOR DISSEMINATING PROPOSALS, INFLAMMATORY MATERIALS OR MATERIALS DEROGATORY TO THE EMPLOYER.

## *ARTICLE 29 - SALES AND TRANSFERS-SCOPE OF OBLIGATION*

**29.1** THIS AGREEMENT SHALL BE BINDING UPON THE PARTIES HERETO, RESPECTIVE SUCCESSORS, ADMINISTRATORS, EXECUTORS, ASSIGNS, AND LEGAL REPRESENTATIVES. IN THE EVENT THE EMPLOYER'S BUSINESS OR OPERATION OR PART THEREOF, IS SOLD, LEASED, TRANSFERRED OR TAKEN OVER BY ANY MEANS WHATSOEVER, INCLUDING BUT NOT LIMITED TO SALE, TRANSFER, LEASE, SUCCESSION, MERGER, CONSOLIDATION, ASSIGNMENT, RECEIVERSHIP, BANKRUPTCY PROCEEDINGS OR OPERATION OF LAW, OR TAKEN OVER OR ABSORBED BY A PARENT COMPANY OR A SUBSIDIARY COMPANY OR SUBSIDIARY CORPORATION, SUCH BUSINESS OR OPERATION SHALL CONTINUE TO BE SUBJECT TO AND COVERED BY THE TERMS AND CONDITIONS OF THIS AGREEMENT FOR THE LIFE THEREOF. THE EMPLOYER SHALL NOT USE ANY LEASING DEVICE TO EVADE THIS AGREEMENT. NOTHING IN THIS AGREEMENT SHALL LIMIT OR RESTRICT THE RIGHT OF AN EMPLOYER TO CEASE ITS BUSINESS OR OPERATIONS.

**29.2** IN THE EVENT AN EMPLOYER BUYS OUT THE BUSINESS OR OPERATIONS OF ANOTHER EMPLOYER AND OPERATES IT AS A SEPARATE LEGAL ENTITY, THEN THE SENIORITY OF THE EMPLOYEES SHALL CONTINUE ON THE SAME BASIS AS IT EXISTED PRIOR TO THE OCCURRENCE OF SAID BUY-OUT.

**29.3** IN THE EVENT AN EMPLOYER BUYS OUT ANOTHER EMPLOYER COVERED BY THIS AGREEMENT AND MERGES OPERATIONS OF THE BOUGHT-OUT EMPLOYER INTO HIS OWN, THE SENIORITY OF THE EMPLOYEES SHALL BE ESTABLISHED AS FOLLOWS:

**(A)** IN THE EVENT THE ACQUIRING EMPLOYER HAS BOUGHT OUT OR MERGED WITH ANOTHER SOLVENT EMPLOYER WHO IS COVERED BY THIS AGREEMENT, THE SENIORITY OF THE EMPLOYEES OF BOTH EMPLOYERS SHALL BE MERGED/DOVE-TAILED WITHIN THEIR SENIORITY UNITS IN ACCORDANCE WITH THEIR DATES OF HIRE WITH THEIR RESPECTIVE EMPLOYER, TO THE EXTENT OF THE ACQUIRING EMPLOYER'S NEED AS TO QUALIFICATIONS AND NUMBER OF EMPLOYEES. THIS PROVISION SHALL APPLY ONLY AS TO MERGED OPERATIONS WITHIN THE SAME LOCAL UNION'S JURISDICTION.

(B) IN THE EVENT THE BOUGHT-OUT EMPLOYER IS INSOLVENT, THE EMPLOYEES OF SUCH EMPLOYER WHO ARE RETAINED SHALL BE PLACED AT THE BOTTOM/END-TAILED OF THE SENIORITY LIST AS A GROUP LISTED IN ACCORDANCE WITH THEIR PREVIOUS SENIORITY STANDING. THE ACQUIRING EMPLOYER NEED RETAIN SUCH EMPLOYEES OF THE BOUGHT-OUT EMPLOYER ONLY TO THE EXTENT OF HIS NEED AS TO QUALIFICATIONS AND NUMBER OF EMPLOYEES.

## *ARTICLE 30 - CONFORMITY TO LAW-SAVINGS CLAUSE*

30.1 IF ANY PROVISION OR THE ENFORCEMENT OR PERFORMANCE OF ANY PROVISION OF THIS AGREEMENT IS OR SHALL AT ANY TIME BE CONTRARY TO LAW, THEN SUCH PROVISION SHALL NOT BE APPLICABLE OR ENFORCED OR PERFORMED, EXCEPT TO THE EXTENT PERMITTED BY LAW. IF AT ANY TIME THEREAFTER SUCH PROVISION OR ITS ENFORCEMENT OR PERFORMANCE SHALL NO LONGER CONFLICT WITH THE LAW, THEN IT SHALL BE DEEMED RESTORED IN FULL FORCE AND EFFECT AS IF IT HAD NEVER BEEN IN CONFLICT WITH THE LAW.

30.2 IF ANY PROVISION OF THIS AGREEMENT OR THE APPLICATION OF SUCH PROVISION TO ANY PERSON OR CIRCUMSTANCES SHALL BE HELD INVALID THE REMAINDER OF THIS AGREEMENT OR THE APPLICATION OF SUCH PROVISION TO OTHER PERSONS OR CIRCUMSTANCES, SHALL NOT BE AFFECTED THEREBY.

30.3 IF ANY PROVISION OF THIS AGREEMENT OR THE APPLICATION OF SUCH PROVISION TO ANY PERSON OR CIRCUMSTANCES SHALL AT ANY TIME BE CONTRARY TO LAW, THEN THE PARTIES SHALL MEET TO NEGOTIATE A SUBSTITUTE PROVISION WHICH SHALL REMAIN IN EFFECT UNTIL THE EXPIRATION OF THE AGREEMENT OR UNTIL THE AFFECTED PROVISION IS RESTORED PURSUANT TO SECTION 29.1 ABOVE. SHOULD THE PARTIES BARGAIN TO IMPASSE OVER THE SUBSTITUTE PROVISION EITHER OR BOTH MAY IMPOSE ECONOMIC SANCTIONS IN SUPPORT OF THEIR POSITION AND NEITHER THE GRIEVANCE AND ARBITRATION PROVISIONS OF THIS AGREEMENT NOR THE NO STRIKE-NO LOCKOUT PROVISIONS SHALL BE APPLICABLE.

## *ARTICLE 31 - FUNERAL LEAVE*

31.1 WHEN AN EMPLOYEE'S MOTHER, FATHER, SISTER, BROTHER, SPOUSE, MOTHER-IN-LAW, FATHER-IN-LAW, GRANDPARENTS, CHILD OR STEPCHILDREN DIES, SAID EMPLOYEE, IF HE SO REQUESTS, SHALL BE GIVEN THREE (3) DAYS OFF WITH PAY.

## *ARTICLE 32 - MILITARY LEAVE OF ABSENCE*

32.1 AN EMPLOYEE SELECTED, DRAFTED OR WHO VOLUNTEERS FOR MILITARY SERVICE FOR THE UNITED STATES OF AMERICA, OR FOR ANY GOVERNMENTAL AGENCY DIRECTLY CONNECTED WITH THE DEFENSE OF THE UNITED STATES (OR ITS ALLIES) SHALL BE GRANTED A MILITARY LEAVE OF ABSENCE WITH ACCUMULATED SENIORITY FOR THE DURATION OF SUCH SERVICE AND AT THE TERMINATION THEREOF SHALL BE REINSTATED ON THE SENIORITY LIST IN HIS PROPER CLASSIFICATION.

## *ARTICLE 33- JURY DUTY*

33.1 REGULAR EMPLOYEES REQUIRED TO PERFORM JURY DUTY SHALL BE PAID THE APPLICABLE RATE OF PAY FOR THEIR CLASSIFICATION FOR ALL TIME SPENT PROVIDED THEY ENDORSE THEIR JURY DUTY PAYCHECK AND TURN IT OVER TO THE EMPLOYER AS PROOF THEY HAVE SERVED ON A JURY, AND THE SAID JURY DUTY PAYCHECK SHALL BELONG TO THE EMPLOYER.

## *ARTICLE 34 - EQUIPMENT*

34.1 THE EMPLOYER SHALL NOT REQUIRE EMPLOYEES TO TAKE OUT ON THE STREETS OR HIGHWAYS A VEHICLE WHICH IS NOT IN SAFE OPERATING CONDITION OR IS NOT PROVIDED WITH THE SAFETY EQUIPMENT PRESCRIBED BY LAW. THE EMPLOYER SHALL BE RESPONSIBLE FOR PROVIDING SUCH EQUIPMENT.

34.2 ALL DOORS, WINDOWS AND POP-OUT WINDOWS ON TRUCKS SHALL BE MAINTAINED IN WORKING ORDER.

34.3 THE EMPLOYER SHALL EQUIP ALL TRUCKS AND TRACTORS WITH MECHANICAL SEATS, WORKABLE HEATERS AND DEFROSTERS AND IF EQUIPPED

WITH AIR CONDITIONING, SAME SHALL BE MAINTAINED AND BE IN WORKING ORDER

## *ARTICLE 35 - TEAMSTERS JOINT COUNCIL NO. 25 TRAINING FUND*

35.1 TO MAINTAIN THE EFFICIENCY AND SKILLS OF THE WORKFORCE DUE TO ONGOING CHANGES IN EQUIPMENT AND TECHNOLOGY, BOTH PARTIES RECOGNIZE THE IMPORTANCE OF EMPLOYEES CONTINUING TO DEVELOP THEIR SKILL AND KNOWLEDGE SO THEY ARE QUALIFIED TO DEAL WITH SUCH CHANGES. THEREFORE, THE EMPLOYER AGREES TO CONTRIBUTE TEN CENTS ($0.10) PER HOUR/PER EMPLOYEE EFFECTIVE JUNE 1, 2006, FIFTEEN CENTS ($.15) EFFECTIVE JUNE 1, 2007 AND TWENTY CENTS ($.20) EFFECTIVE JUNE 1, 2008, WHO

IS COVERED BY THIS AGREEMENT TO THE TEAMSTERS JOINT COUNCIL NO. 25 TRAINING FUND AND HEREBY AGREES TO THE TERMS AND CONDITIONS OF SAID TRAINING FUND.

## *ARTICLE 36 – DRUG AND ALCOHOL TESTING/PHYSICAL EXAMINATION POLICY*

**36.1** THE UNION RECOGNIZES THAT THE EMPLOYERS OF TEAMSTERS ARE REQUIRED TO MEET THE REGULATIONS ESTABLISHED BY MORE THAN ONE GOVERNMENTAL AGENCY.

**36.2 (A)** IF AN EMPLOYEE IS REQUIRED BY HIS EMPLOYER TO BE TESTED FOR DRUGS OR ALCOHOL; THE EMPLOYER SHALL PAY THE ENTIRE COST OF THE DRUG OR ALCOHOL TESTING PROCEDURE. THE EMPLOYEE SHALL BE TESTED IMMEDIATELY AFTER THE INCIDENT WHICH GAVE RISE TO THE NEED FOR SUCH TESTING, AND SHALL BE MADE WHOLE FOR ANY TIME LOST AND SHALL RETAIN HIS SENIORITY UNTIL SUCH TEST RESULTS ARE MADE AVAILABLE. DRUG AND ALCOHOL TESTING SHALL BE PAID BY THE EMPLOYER.

**36.2(B)** IT IS FURTHER UNDERSTOOD THAT POLICIES ADOPTED BY THE EMPLOYER THAT ARE IN EXCESS OF GOVERNMENTAL REGULATIONS SHALL BE SUBJECT TO THE GRIEVANCE PROCEDURE ESTABLISHED IN ARTICLE 7 OF THIS AGREEMENT.

**36.3** PHYSICAL/DOT EXAMINATIONS. IF AN EMPLOYEE IS REQUIRED BY THE EMPLOYER TO TAKE A PHYSICAL OR DOT EXAMINATION, THE EMPLOYER SHALL PAY THE ENTIRE COST OF SUCH PHYSICAL EXAMINATION WHEN THE EMPLOYEE UTILIZES THE EMPLOYER'S DESIGNATED PHYSICIANS.

## *ARTICLE 37 - D.R.I.V.E. AUTHORIZATION AND DEDUCTION*

**37.1** UPON RECEIPT OF A WRITTEN AUTHORIZATION FROM THE EMPLOYEE, THE EMPLOYER AGREES TO DEDUCT FROM THE EMPLOYEE'S PAYCHECK VOLUNTARY CONTRIBUTIONS TO DEMOCRAT REPUBLIC INDEPENDENT VOTER EDUCATION (D.R.I.V.E.). D.R.I.V.E. SHALL NOTIFY THE EMPLOYER OF THE AMOUNTS DESIGNATED BY EACH EMPLOYEE THAT ARE TO BE DEDUCTED FROM HIS/HER PAYCHECK ON A WEEKLY BASIS FOR ALL WEEKS WORKED. THE PHRASE "WEEKS WORKED" EXCLUDES ANY WEEK OTHER THAN A WEEK IN WHICH THE EMPLOYEE EARNED A WAGE. THE EMPLOYER SHALL TRANSMIT TO D.R.I.V.E. NATIONAL HEADQUARTERS ON A MONTHLY BASIS, IN ONE (1) CHECK,

THE TOTAL AMOUNT DEDUCTED ALONG WITH THE NAME OF EACH EMPLOYEE ON WHOSE BEHALF A DEDUCTION WAS MADE, THE EMPLOYEE'S SOCIAL SECURITY NUMBER, AND THE AMOUNT DEDUCTED FROM THE EMPLOYEE'S PAYCHECK. D.R.I.V.E. AGREES TO INDEMNIFY THE EMPLOYER AND HOLD IT HARMLESS AGAINST ANY AND ALL SUITS, CLAIMS, DEMANDS, AND OTHER LIABILITY FOR DAMAGES, PENALTIES, OR BACK PAY THAT MAY ARISE OUT OF, OR RESULTING FROM THE APPLICATION OF THE PROVISIONS OF THIS ARTICLE.

## *ARTICLE 38 - TEAMSTERS NATIONAL 401(k) PLAN*

38. IF OWNER OPERATORS CHOOSE NOT TO PARTICIPATE IN THE SUBURBAN TEAMSTERS OF NORTHERN ILLINOIS HEALTH, WELFARE & PENSION BENEFIT PLANS, THEY MAY CONTRIBUTE THE EQUIVALENT AMOUNT OF CURRENT CONTRIBUTION RATES/MONIES TO THE TEAMSTERS NATIONAL 401(K) SAVINGS PLAN.

38. THE UNION AND THE EMPLOYEES SHALL INDEMNIFY THE EMPLOYER AND HOLD IT HARMLESS AGAINST ANY AND ALL CLAIMS, DEMANDS, SUITS, TAX CONSEQUENCES OR OTHER FORMS OF LIABILITY THAT SHALL ARISE OUT OF, OR BY REASON OF, ANY ACTION TAKEN OR NOT TAKEN BY THE EMPLOYER FOR THE PURPOSE OF COMPLYING WITH THIS SECTION OR IN RELIANCE ON ANY AUTHORIZATION OR NOTICE GIVEN TO THE EMPLOYER BY THE UNION OR EMPLOYEE REGARDING THE EMPLOYEES PARTICIPATION IN THE PROGRAM AND THE AMOUNT OF ANY DEDUCTION MADE PURSUANT TO SUCH PARTICIPATION.

## *ARTICLE 39 – FEDERAL AND STATE REGULATIONS*

39.1 NOTWITHSTANDING ANY OTHER PROVISION OF THIS AGREEMENT, THE PARTIES AGREE THAT THE EMPLOYER, IN ITS SOLE DISCRETION, MAY TAKE WHATEVER ACTION IT DEEMS APPROPRIATE TO COMPLY WITH THE PROVISIONS OF THE AMERICANS WITH DISABILITIES ACT AND TO MEET ITS OBLIGATIONS AND EXERCISE ITS RIGHTS UNDER THE FAMILY MEDICAL LEAVE ACT.

## *ARTICLE 40 - DURATION AND TERMINATION*

40.1 THIS AGREEMENT SHALL BECOME EFFECTIVE ON JUNE 1, 2006 AND SHALL REMAIN IN FULL FORCE AND EFFECT UNTIL AND INCLUDING MAY 31, 2009, THIS AGREEMENT SHALL BE RENEWED AUTOMATICALLY FOR PERIODS OF ONE (1) YEAR UNLESS EITHER THE EMPLOYER OR THE UNION GIVES WRITTEN NOTICE TO THE OTHER OF A DESIRE TO MODIFY, AMEND OR TERMINATE SAME AT LEAST SIXTY (60) DAYS PRIOR TO THE EXPIRATION OF ANY SUCH PERIOD.

**IN WITNESS WHEREOF** THE PARTIES HAVE HEREUNTO SET THEIR HANDS THIS 31st DAY OF JANUARY, 2007.

***AGREED***:

***FOR THE EMPLOYER:***

A.T.M ENT. LTD

*NAME OF EMPLOYER*

*SIGNATURE AND TITLE*

***FOR THE UNION:***

*DOMINIC ROMANAZZI*
*PRESIDENT*
*TEAMSTERS LOCAL NO. 330*
*2400 BIG TIMBER ROAD*
*BLDG. B, SUITE 201*
*ELGIN, IL 60124*

**MEMORANDUM OF AGREEMENT**
**FOR OWNER/DRIVERS**

This Agreement is entered between the International Brotherhood of Teamsters, Local Union No 330 ("Union") and ______________________________, a corporation in good standing incorporated in the state of ________________________, ("Employer").

**WITNESSETH**

WHEREAS, the Employer and the Union wish to promote continued employment in the industry and prevent interruption of work and hereby agree to adopt such terms:

**NOW THEREFORE IT IS AGREED AS FOLLOWS:**

**Section 1.** The Employer (Owner/Driver) hereby recognizes the Union as the Sole and exclusive bargaining representative of all the Employer's employees performing work within the craft and geographic jurisdiction of the Union as the same exists as of the date hereof and including any such additional work or geographic area over which the Union may hereafter acquire jurisdiction with respect to wages, hours and other terms and conditions of employment.

**Section 2.** The parties acknowledge that this Memorandum of Agreement has been entered into voluntarily and involves Owner/Drivers only.

**Section 3.** The Employer agrees to adopt and be bound by the terms and conditions of the Teamsters Local 330 Area Wide Material Hauling Agreement effective from June 1, 2006 through May 31, 2009 and all subsequent amendments thereto are incorporated by reference as if fully set forth herein ("Area Wide Agreement"), except as modified by this Memorandum of Agreement.

**Section 4.** The Owner/Driver only may, upon execution of the Memorandum of Agreement, elect to contribute amounts equal to the contributions required by Article 10 and Article 11 of the Area Wide Agreement to the Teamsters National 401(k) Savings Program in lieu of making such contributions on behalf of himself/herself to those Trust Funds. If the Owner/Driver elects to participate in the 401(k) plan as permitted by this Section 4, the Union shall have the same rights with respect to delinquent 401(k) contributions as the Union possesses under the Area Wide Agreement with respect to delinquent contributions under Article 10 and Article 11; and the Owner/Driver shall not be permitted to participate in the Health and Welfare Fund established by Article 10 of the Area Wide Agreement except under the following condition and such other terms and conditions as may be required by the Trustees of the Fund:

(a) between April 1 and April 30, the Owner/Driver notifies the Union and the Health and Welfare Fund of his/her election to participate in and contribute to that Fund;

(b) the Owner/Driver pays the entire contribution due to the Health and Welfare Fund for the month of May; and

(c) the Owner/Driver continues contributions to the Health and Welfare Fund in accordance with the Area Wide Agreement.

In the event the Owner/Driver elects to participate in the Health and Welfare Fund Pursuant to this Section 4, the Owner/Driver shall nevertheless continue to contribute to the Teamsters National 401(k) Savings Plan an amount equal to the contribution required by Article 11 – Pension of the Area Wide Agreement.

**Section 5.** The Owner/Driver agrees that if the Employer utilizes an Employee (someone other than the Owner/Driver) to drive the truck, that the Area Wide Agreement shall apply to that Employee and the Employer shall contribute to the Health and Welfare and pension Funds on behalf of such Employee(s) in accordance with the Area Wide Agreement.

**Section 6.** The Owner/Driver shall maintain his/her membership in the Union.

**Section 7.** The Owner/Driver shall maintain proper books and records and make such records available for inspection by the Union to determine whether the Owner/Driver is complying with the provisions of this Memorandum of Agreement.

**Section 8.** This Memorandum of Agreement shall become effective on June 1, 2006 and shall remain in full force and effect until and including May 31, 2009. The Employer or the Union shall give written notice to the other of a desire to modify, amend and terminate this Agreement at least sixty (60) days prior to expiration of said Agreement.

**Section 9.** The parties agree that this Memorandum of Understanding is the complete written agreement between the parties and can only be amended in writing by the parties. No other oral representations shall be binding on either party nor shall any party rely upon such oral statements that vary the terms of the written contract.

**Section 10.** The Employer acknowledges and accepts the facsimile signatures on this contract as if they were the original signatures. The Employer further acknowledges receipt of a copy of the Area Wide Agreement.

**PROOF OF INCORPORATION**
**MUST BE PROVIDED WITH EXECUTED AGREEMENT**

IN WITNESS WHEREOF, and in consideration of the mutual promises of the parties, And other good and valuable consideration, this Memorandum of Agreement is Entered into this ________________day of ___________________, 2______.

FOR THE EMPLOYER

Corporation Name:____________________

Address: ____________________

City, State, Zip:____________________

Telephone: ____________________

Fax: ____________________

____________________
Signature and Title (Print)

____________________
Signature (Sign)

FOR THE UNION

Teamsters Local 330
2400 Big Timber Rd., Bldg. B, Suite 201
Elgin, IL 60123
(847) 695-1516
(847)-695-1579

____________________
Dominic Romanazzi,
President & Principal Officer

PROOF OF INCORPORATION PROVIDED: ( ) YES ( ) NO

If signed before: WHEN and under what TRADE name:

____________________

____________________

# WITHDRAWAL CARD

If you leave your present employment for whatever reason, be sure to report to the Union office to obtain a WITHDRAWAL CARD. Your dues must be paid through the month in which the withdrawal card is taken.

There is no cost for the WITHDRAWAL CARD.

You are obligated to pay dues to Local 330 until you obtain a WITHDRAWAL CARD. Most employers do not deduct dues from employee's paychecks covering periods of leave, including but not limited to, sick leave, vacation periods and periods covered by Workman's Compensation. Remember, it is your responsibility to be certain that you are current in your dues.

Any members three (3) months in arrears in dues shall automatically stand suspended at the end of the third (3rd) month.



**TEAMSTERS LOCAL UNION NO. 330**
GENERAL CHAUFFEURS SALESDRIVERS AND HELPERS
AFFILIATED WITH THE INTERNATIONAL BROTHERHOOD OF TEAMSTERS
2400 BIG TIMBER ROAD, BUILDING B, SUITE 201, ELGIN, ILLINOIS 60124 • 847-695-1516 • FAX 847-695-1579
DOMINIC ROMANAZZI *President / Principal Officer*



# Grievance

## Employee's Information

Name: Local 330
Address: 2400 Big Timber Rd., 201B
Elgin, IL 60124

Phone: (847) 695-1516
Time:

## Company Information

Company: ATM Enterprises
Address: 100 S. Main St., Suite 102
Elburn, IL 60119

Date: February 21, 2008
Phone:

**Nature of Grievance:** Local 330 requests a Surety Bond in the amount of $50,000.00 to guarantee wage and benefit contributions. ATM has been found to be on violation of wage and benefit contributions in which ATM is the guarantor.

**Settlement Request:** Submit to Local 330 the Surety Bond stipulated within Article 10.1 j of the current Agreement.

Signed: [signature]
Dated: February 21, 2008
Page: 1 of 1

Revised 11-28-06







# TEAMSTERS LOCAL UNION NO. 330

GENERAL CHAUFFEURS SALESDRIVERS AND HELPERS

AFFILIATED WITH THE INTERNATIONAL BROTHERHOOD OF TEAMSTERS



2400 BIG TIMBER ROAD, BUILDING B, SUITE 201, ELGIN, ILLINOIS 60124 • 847-695-1516 • FAX 847-695-1579

DOMINIC ROMANAZZI *President / Principal Officer*

February 26, 2008

Mr. Ted Memmoli
ATM Enterprises
100 S. Main St., Suite 102
Elburn, IL 60119

RE: Rebuttal to Joe Berglund Letter

Dear Mr. Memmoli:

I am in receipt of the February 22, 2008 letter from your Attorney, Mr. Joseph Berglund. In response I must state that it is not the intent of Local 330 to put ATM Enterprises out of business, however, it is our intent to make certain that your company abides by the current Collective Bargaining Agreement.

I realize that you are disputing the fund offices recent audit and that the matter will be resolved in the United States District Court, however, your current and future business practice concerns me greatly.

So that no additional arrearages occur, I need to be certain that you are now operating in compliance with the Local 330 Material Hauling Agreement. Accordingly, I am requesting that you immediately submit to the Local any and all information pertaining to current subcontractors being utilized by ATM Enterprises. Please provide this information within seventy two (72) hours per Article 4.4.

Additionally, I am requesting that you respond to all other inquiries and or grievances issued by Local 330 in a timely manner.

In closing, Local 330 will take all necessary and legal action to remedy this ongoing dispute which may include strike action. If you have any questions, please do not hesitate to contact me.

Sincerely,

Dominic Romanazzi
President

Sent via Facsimile and Regular Mail





# A.T.M. ENT. LTD.

100 S. MAIN ST. STE 102
ELBURN, IL 60119
PH. 630-365-9366 FAX 630-365-9368
NEXTEL 109*158089*1
CELL 224-629-7451

February 27, 2008

***Fax to(847) 695-1579***
Dominic Romanazzi, President
Teamsters Local Union No. 330
2400 Big Timber Road, Building B, Suite 201
Elgin, IL 60124

Re: Letter dated February 26, 2008

Dear Dominic,

As you know and have known since at least June 2006, A.T.M. Enterprises has taken steps that may have been required of its brokers to sign agreements with Local 330. However, your office failed to sign them to an agreement. You have permitted A.T.M. to operate as it has been operating without any objection for at least the last 1 ½ years.

As part of my attempts to respond to concerns you expressed, please provide me with a list of names and addresses of all person/entities signatory to an agreement with Local 330 from July 1, 2005 – present and with copies of applications from all persons/entities to enter into an agreement with Local 330 for the same time period by 5:00 p.m. tomorrow.

Although I dispute that your grievances are timely, I will respond in my attempts to work this out with you. My response shall not be construed as a waiver of any defenses to your claims and A.T.M. specifically reserves its rights to raise any and all defenses available to it including but not limited to the untimeliness of your claims.

Please contact me if you have any questions regarding this matter.

Very truly yours,

Ted Memmoli
President





# TEAMSTERS LOCAL UNION NO. 330

GENERAL CHAUFFEURS SALESDRIVERS AND HELPERS

AFFILIATED WITH THE INTERNATIONAL BROTHERHOOD OF TEAMSTERS



2400 BIG TIMBER ROAD, BUILDING B, SUITE 201, ELGIN, ILLINOIS 60124 • 847-695-1516 • FAX 847-695-1579



DOMINIC ROMANAZZI *President / Principal Officer*

## Grievance

**Employee's Information**

Name: Teamsters Local 330

Address: 2400 Big Timber Rd.
Elgin, IL 60124

Phone: (847) 695-1516

Time: ______

**Company Information**

Company: ATM Enterprises

Address: 100 S. Main St. Suite 102
Elburn, IL 60119

Date: March 4, 2008

Phone: (630) 365-9366

**Nature of Grievance:** On February 26, 2008 correspondence was sent to ATM Enterprises requesting any and all information pertaining to current Subcontractors being utilized (letter attached). To date, ATM has not provided any information. Accordingly, such request is being submitted again in the form of an official grievance.

**Settlement Request:** That ATM abide by the current contract including Article 4 & 4.4 Subcontracting, and provide to the Union the requested information within seventy two (72) hours

Signed: [signature] LOCAL 330

Dated: March 4, 2008

Page: 1 of 1







# TEAMSTERS LOCAL UNION NO. 330

## GENERAL CHAUFFEURS SALESDRIVERS AND HELPERS

AFFILIATED WITH THE INTERNATIONAL BROTHERHOOD OF TEAMSTERS

2400 BIG TIMBER ROAD, BUILDING B, SUITE 201, ELGIN, ILLINOIS 60124 • 847-695-1516 • FAX 847-695-1579

DOMINIC ROMANAZZI *President / Principal Officer*

March 7, 2008

Mr. Ted Memmoli
ATM Enterprises
100 S. Main Street, Suite 102
Elburn, IL 60119

RE: Pending Subcontracting Grievances

Dear Mr. Memmoli:

It has come to my attention that there may be some confusion regarding grievances I filed on December 5, 2007 and March 4, 2008 concerning your subcontracting practices. I am writing to clarify the Union's position with respect to these grievances and to propose a way to deal with them that is efficient for both the Union and the Company.

The December 5 and March 4 grievances request that the Company comply with certain provisions of Article 4 of the Area Wide Material Hauling Agreement. For purposes of clarification, be advised that the Local is not requesting through the grievances, and has never requested, that you stop using any subcontractors, owner operators or owner drivers or cause them to do anything, including signing or abiding by any agreements. The Union is seeking by the grievances to enforce only the following provisions of Article 4:

- The last sentence of Article 4.2, "The Contractor shall neither sublet nor hire any such employers unless the employees of such employers are paid an amount equal to the wages and fringe benefits being paid to employees working under this Agreement".
- The last sentence of Article 4.3, "The Contractor shall be a guarantor for such payments".
- The provisions in Article 4.5 requiring that owner operators and owner drivers "must be paid an amount equal to the wages and fringe benefits being paid to employees working under this Agreement" and stating that "The Employer agrees to assume any liability for failure of any one performing work covered by this Agreement who is not being paid the proper rates".





For further clarification, the Union does not intend to strike or withdraw its members to enforce these provisions, but we will utilize all legal avenues available. That said, I know the Company is challenging in litigation with the Trust Funds whether it is required under Articles 4.3 and 4.5 to pay wages or fringe benefits for employees of subcontractors, owner operators and owner drivers who do not pay the proper rates or benefits. To avoid having the same fight in different legal arenas, I suggest we put the December 5 and March 4 grievances on hold pending the outcome of the Trust Fund case.

If you agree with my suggestion, please let me know in writing immediately. If I do not hear from you in that regard by March 14, I will have to advance the grievances to the next step of the procedure.

Sincerely,

Dominic Romanazzi
President

Sent via Facsimile and US Mail



# TEAMSTERS LOCAL UNION NO. 330

GENERAL CHAUFFEURS SALESDRIVERS AND HELPERS

AFFILIATED WITH THE INTERNATIONAL BROTHERHOOD OF TEAMSTERS



3400 BIG TIMBER ROAD, BUILDING B, SUITE 201, ELGIN, ILLINOIS 60124 • 847-695-1516 • FAX 847-695-1579

DOMINIC ROMANAZZI President / Principal Officer

May 7, 2008

Mr. Ted Memmoli
ATM Enterprises
100 S. Main St., Suite 102
Elburn, IL 60119

**Official Grievance**

Dear Mr. Memmoli

As I informed you on March 7, 2008, Local 330 has been seeking through its March 4, 2008 grievance to enforce the following provision of the Area Wide Agreement:

- The last sentence of Article 4.2, "The Contractor shall neither sublet nor hire any such employers unless the employees of such employers are paid an amount equal to the wages and fringe benefits being paid to employees working under this Agreement."

- The provisions in Article 4.5 requiring that owner/operators and owner/drivers "must be paid an amount equal to the wages and fringe benefits being paid to employees working under this Agreement" and stating that "The Employer agrees to assume any liability for failure of any one performing work covered by this Agreement who is not being paid the proper rates."

We agreed to put the grievance on hold pending the outcome of the federal lawsuit, and I intend to abide by that agreement. However, I also intend to immediately resume processing the grievance when the outcome of the federal case is known. In order to be prepared for that event, to determine whether a hearing before the Labor Management Committee will be necessary and to determine the extent of ATM's liability under the foregoing contract provisions, I am requesting the following information:

1. The names of the subcontractors and owner/operators ATM used to perform worked covered by the Area Wide Agreement from March 4, 2008 to the present.

2. Payroll or other financial records showing the money received by or paid on behalf of the persons actually operating the equipment for the subcontractors and owner/operators, in the form of wages, salary, corporate distributions and employment benefits





(such as health insurance premiums, 401(k) payments), but not including overhead expenses (such as fuel costs, license fees, etc.), from March 4, 2008 to the present.

I am requesting that you provide this information no later than May 16, 2008. I am also requesting that you update the information on a monthly basis until the outcome of the federal case.

Sincerely,

Dominic Romanazzi
President

Sent via Facsimile and Regular US Mail