IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TRUSTEES OF THE SUBURBAN ) <br> TEAMSTERS OF NORTHERN ILLINOIS ) <br> WELFARE AND PENSION FUNDS, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> A.T.M. ENTERPRISES, LTD., an Illinois ) <br> Corporation, ) <br> ) <br> Defendant. ) | 08 C 1074 <br><br> Judge Marovich |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION TO STRIKE OR SEVER FOR SEPARATE TRIAL OF THIRD-PARTY CLAIM**

NOW COMES the Defendant/Third-Party Plaintiff, A.T.M. Enterprises, Ltd. ("ATM"), and for its Response to Plaintiffs' Motion to Strike or Sever For Separate Trial of Third-Party Claim states as follows:

1.  Plaintiffs assert that ATM's Third-Party Complaint must be stricken or, in the alternative, severed from Plaintiffs' action. However, Plaintiffs' assertions are not only misplaced but Plaintiffs fail to cite Supreme Court and other precedent which is dispositive of Plaintiffs' Motion in ATM's favor.

2.  ATM does not assert that it was induced by fraud to sign a collective bargaining agreement. Thus, cases such as Laborers' Pension Fund v. A & C Environmental, 301 F.3d 768 (7th Cir. 2002) are inapposite to the case at hand. ATM understands that fraud in the inducement is not a valid defense to a fund's action to collect contributions under ERISA. Rather, ATM asserts as its second Affirmative Defense that the provisions of the Collective Bargaining

Agreement ("CBA") under which Plaintiffs seek contributions are illegal. An affirmative defense which asserts illegality as a defense to a funds' action for contributions is a valid defense. See Kaiser Steel Corporation v. Mullins, 455 U.S. 72, 79-83 (1982) (illegal promises will not be enforced in cases controlled by federal law including cases filed by multi-employer trust funds governed under the Employee Retirement Income Security Act of 1974 ("ERISA"), § 515 as amended, 29 U.S.C. § 1145)

3. This is not a typical ERISA lawsuit wherein an employer is being sued for contributions that are allegedly owed on behalf of employees. Plaintiffs are not asserting that ATM owes contributions on behalf of ATM's employees. Rather, Plaintiffs claim that ATM owes contributions for its owner-operators that are referred to as subcontractors in Plaintiffs' Complaint. ATM, unlike most employers in a typical ERISA lawsuit, is not engaged in the business of construction. ATM is engaged in the business of transporting gravel, sand, stone and dirt. ATM employs employees to transport such material and pays contributions to Plaintiffs for such employees. There is no dispute over ATM's obligations to pay contributions on behalf of such employees.

4. However, ATM hires owner-operators (who own their own trucks) to transport such material as well when all of ATM's trucks and employees are engaged at work since ATM owns a limited number of trucks which are expensive to purchase in the first instance. Plaintiffs claim that ATM owes contributions for owner-operators it hired to transport such material. Plaintiffs allege in paragraphs 8 and 9 of their Complaint that ATM violated the subcontracting provisions of the CBA for several reasons including but not limited to the reasons that ATM failed to require its subcontractos to sign an agreement and to act as a guarantor for payment of the subcontractor. ATM claims that the subcontracting provisions violate 29 U.S.C.A. § 158(e). In Kaiser, the Supreme Court declared "[i]t is ... well established, however, that a federal court

has a duty to determine whether a contract violates federal law before enforcing it." 455 U.S. at 83. ATM asserts the subcontracting provisions are illegal and cannot be enforced. For instance, a union signatory clause in <u>Cement Masons Local Union No. 97, AFL-CIO</u>, 149 NLRB 1127 (1964), was found to violate 29 U.S.C.A. § 158(e) since it dealt with work that was not to be performed at the construction site. The clause provided that if the contractor should subcontract work, provision should be made in such subcontract requiring that the subcontractor and his subcontractors be signatory to the agreement and abide by all the terms of the agreement. The Board explained that the clause extended to subcontractors engaged in transporting material and thus did not deal with work to be performed at the construction site. <u>See also</u> <u>Teamsters (California Dump Truck Owners)</u>, 227 NLRB 269 273 (1976) (CBA which requires payments to a Health and Welfare Plan providing a specific level of benefits to be set up does not seek to preserve work for Union employees, but rather derogates employees' Section 7 rights to negotiate the type of benefits they seek by dictating the type of benefits payable to the subcontractors' employees).

     5.      The Supreme Court's opinion in <u>Kaiser</u> demonstrates that Plaintiffs are incorrect by representing in paragraph 8 of their Motion that ATM's defense is immaterial to Plaintiffs' action and invalid. As the <u>Kaiser</u> Court expressly stated, courts have a duty to determine if contractual provisions violate violate federal law before enforcing it. 455 U.S. at 83.

     6.      ATM likewise asserts in its Amended Third-Party Complaint that the subcontracting provisions of the CBA it entered into with the Third-Party Defendant Union violate 29 U.S.C.A. § 158(e). The Amended Third-Party Complaint against the General Teamsters, Chauffeurs, Salesdrivers and Helpers Local 330, Affiliated with the International Brotherhood of Teamsters ("Union"), which was filed on May 27, 2008 pursuant to Fed.R.Civ.Pro. 15(a) [Doc. No. 23], contains in Count I a claim for indemnification and in Count

II a claim to declare that the very same provisions in the CBA that are the subject of Plaintiff's Complaint are illegal.

7. The Amended Third Party Complaint does not present issues for which severance should be ordered. In fact, Count II of the Amended Third-Party Complaint presents the identical issue raised by Defendant in its Second Affirmative Defense to Plaintiff's Complaint. Defendant's Amended Third-Party Complaint will not unduly delay the Plaintiffs' case against Defendant especially in the presence of factual legal issues that are common to both claims of Plaintiffs and Defendant. For example, Plaintiffs and Defendant will seek to discover and admit facts which show that the contractual provisions at issue are legal or illegal

8. Severing Defendant's Amended Third-Party Complaint will only result in the waste of judicial resources since the parties would then be required to present the very same witnesses in two separate trials and will also thereby inconvenience witnesses. Since a majority of the witnesses overlap in both cases (i.e., ATM's owner, Third-Party Defendant Union President and Fund Trustee Dominic Romanazzi, and Defendant's subcontractors), and legal issues relating to the legality/illegality of the subcontracting provisions will be tried in defense to the Plaintiffs' Complaint and in support of Defendant's Amended Third-Party Complaint, severance would actually waste the Court's judicial resources. Thus, Defendant's Amended Third-Party Complaint, which involves factual issues that overlap Defendant's affirmative defenses to Plaintiffs' Complaint, is not irrelevant and immaterial to the Funds' action as they boldly represent.

9. In <u>Trustees of the Chicago Painters and Decorators Pension Fund v. North Avenue Construction Co.</u>, 2002 WL 63815 (Judge Kocoras, N.D.Ill., January 17, 2002) which is attached hereto as Exhibit A, Judge Kocoras specifically ruled that an employer's third party complaint against a union "will not unduly complicate the suit from the Funds' perspective"

wherein the employer claimed that any liability it may have for delinquent payments was a direct result of the alleged fraud of the union. As in North Avenue Construction, ATM's Amended Third-Party Complaint against the union will not unduly complicate or delay this cause and Plaintiffs fail to provide any concrete evidence that proceeding to trial without bifurcating the claims will do so.

10. Plaintiffs state in the introductory paragraph of their Motion that it is brought under Fed.R.Civ.Pro. 14(a). However, Fed.R.Civ.P. 42(b) appears to be the appropriate Rule which governs the issue as to whether ATM's Third-Party Complaint should be severed. Fed.R.Civ.P. 42(b) provides [t]he court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues....

11. To determine whether bifurcation is appropriate under Rule 42(b), the court first must "determine whether separate trials would avoid prejudice to a party or promote judicial economy." Houseman v. U.S. Aviation Underwriters, 171 F.3d 1117, 1121 (7th Cir.1999), citing DeWitt, Porter, Huggett, Schumacher & Morgan v. Kovalic, 991 F.2d 1243, 1245 (7th Cir.1993). If either of these criteria is met, the court must determine whether bifurcation would unfairly prejudice the non-moving party. Id. Finally, separate trials must not be granted if doing so would violate the Seventh Amendment's guarantee that "no fact tried by a jury shall be otherwise reexamined." Id. In other words, the district court "must not divide issues between separate trials in such a way that the same issue is reexamined by different juries." Matter of Rhone-Poulenc Rorer Inc., 51 F.3d 1293, 1303 (7th Cir.1995). Although two juries may examine overlapping evidence, they may not decide factual issues that are common to both trials and essential to the outcome of both. Houseman, 171 F.3d at 1126.

12.     Plaintiffs' request to sever does not meet any of the threshold criteria for bifurcation. Plaintiffs do not describe with specificity any prejudice they ill suffer if their claim proceeds to trial without bifurcation.  Moreover, considerations of judicial economy weigh heavily in favor of trying both claims together.  More importantly, bifurcation would risk inconsistent verdicts on the same facts.  Plaintiffs merely conclusory assert that the Third-Party complaint will needlesly complicate their action against ATM but notably fail to produce any concrete examples and it is now too late for Plaintiffs to attempt to raise any such exammples in their Reply.   In any event, the factual and legal claims relating to Plaintiffs claim and ATM third-party claim are interrelated and to bifurcate them would also create the risk of inconsistent verdicts in violation of <u>Houseman</u>, 171 F.3d at 1126.  Further, Plaintiffs fail to state in their Motion any basis for standing to assert or, for that matter, any basis which warrants the Court to strike ATM's Third-Party Complaint.

WHEREFORE, Defendant moves this Honorable Court to deny Plaintiff's Motion to Strike or Sever for Separate Trial of Third-Party Claim and for such other relief deemed just and equitable.

Respectfully submitted,

ATM Enterprises, Ltd.

By:     /s/ Joseph P. Berglund
         One of Its Attorneys

Joseph P. Berglund
Kenneth M. Mastny
BERGLUND & MASTNY, P.C.
1010 Jorie Boulevard, Suite 370
Oak Brook, Illinois 60523
(630) 990-0234

J:\C-Drive\WPDOCS\ATM ENTERPRISES LTD\Reponse to Motion to Sever 6 20 08.wpd